THE STATE OF CONNECTICUT *vs.* FRANK PALKO.

MALTBIE, C. J., HINMAN, BANKS, AVERY and BROWN, Js.

530

Argued February 4th—decided March 4th, 1937.

*David Goldstein,* with whom, on the brief, was *Johnson Stoddard,* for the appellant (defendant).

*William H. Comley,* State's Attorney, with whom, on the brief, was *Lorin W. Willis,* Assistant State's Attorney, for the appellee (the State).

AVERY, J. The accused was indicted by a grand jury of the county of Fairfield, charged with murder in the first degree in the wilful, deliberate and premeditated killing of Thomas Kearney, at Bridgeport, September 30th, 1935. Subsequently, at the January term of the Superior Court in Fairfield County, he was brought to trial before the court and a jury which resulted in a verdict of guilty of murder in the second degree. The verdict was returned on January 24th,

1936, and on January 28th the court sentenced the prisoner, as provided by law, to confinement in the Connecticut state prison at Wethersfield for the term of his natural life. On the same day, pursuant to a notice of intention to appeal, filed by the State, the trial judge granted in writing permission to the State to appeal; and, thereafter, on July 30th, 1936, this court rendered its judgment finding error in the instructions of the trial court to the jury upon the question of premeditation and also on certain rulings upon evidence, and a new trial was ordered. *State* v. *Palko*, 121 Conn. 670, 186 Atl. 657. The case then came to the September term of the Superior court in Fairfield County and was tried before the court and a jury; and, on October 15th, 1936, the jury returned a verdict of guilty of murder in the first degree; and the court thereupon imposed upon the accused a sentence of death as provided by law. From this judgment the defendant has appealed.

In the assignments of error, it is claimed that the trial court erred in refusing to set aside the verdict; in its instructions to the jury; in certain rulings upon evidence; in refusing to grant a change of venue; and, finally, that the second trial placed him twice in jeopardy for the same offense in violation of his constitutional rights under the state and federal Constitutions. The last two assignments are the only ones which are seriously pressed upon this appeal either in brief or in argument. As the case, however, is a capital one, we have examined the entire record under all the assignments.

The denial of the motion to set aside the verdict is to be decided by determining whether the jury might reasonably have found that the evidence established beyond a reasonable doubt the guilt of the accused as charged with the commission of the crime of murder

in the first degree by evidence equivalent to that of two witnesses. There was evidence from which the jury might have found beyond a reasonable doubt that late in the evening of September 29th, 1935, accompanied by Frank Burke, the accused took with him a revolver which he had possessed for several months, left his apartment at 590 Fairfield Avenue in Bridgeport and went to Gilman's Music Store at 243 Fairfield Avenue; and, just after midnight, broke into a show window. Each took a radio and carried it away, departing by different routes. In breaking the plate glass window with the revolver, the grips were broken and were found there shortly after. Stamped upon these grips were the letters "U. S." which was the trade name of the 32 caliber revolver possessed by the accused. The accused proceeded east on Fairfield Avenue to Broad Street, thence northerly to Elm Street, thence west to Harrison Street, thence north to Golden Hill Street and west along the south sidewalk of that street. As he was so proceeding on Golden Hill Street, a police radio car, occupied by Sergeant Kearney and a patrolman, drew up at the south curb. One of the officers stepped out of the car on the left-hand side and, laying his hand on the shoulder of the accused, inquired where he was going with the radio. The other officer stepped out of the right-hand side of the car and proceeded to where the defendant was standing. As the first officer accosted the accused, he was shot by the latter who then turned to the other officer and shot him. The accused stated in a confession in evidence that if he had not been on parole he would not have shot the officers. Thereafter, the accused ran west on Golden Hill Street, about fifty feet, when another police car approached and as the officer therein started to alight, the accused fired a shot, the bullet lodging in the cushion of the rear seat of the car. The

accused dropped the radio onto a rampway leading to a garage on the south side of Golden Hill Street, then ran west to Courtland Street, thence among several buildings and backyards to Fairfield Avenue, and walked west to the rear entrance of the apartment from whence he had started. As the result of the wounds inflicted, Sergeant Kearney died the following day.

These facts were abundantly supported by the testimony in the amount required under our law. The statutory requirement for conviction in a capital case that there shall be the testimony of at least two witnesses or its equivalent, General Statutes, § 6479, does not mean that there must be two or more witnesses testifying to the same fact or to each fact. "If there be two, or more witnesses, each testifying to different parts of the same transaction, or to different circumstances attending it, and all concurring to prove the crime alleged; this will be sufficient to warrant a conviction, though there should not be two witnesses to any one fact." *State* v. *Schutte*, 97 Conn. 462, 467, 117 Atl. 508. The evidence justified the inference that the accused had the revolver in his possession and intended to shoot and to kill, if necessary, to prevent his capture. The jury could reasonably have found a design on the part of the accused to effect the death of any person, if necessary, to prevent his capture and effect his escape and that the shooting of the officer was wilful, deliberate and premeditated. *State* v. *Simborski*, 120 Conn. 624, 629, 182 Atl. 221; *State* v. *Chapman*, 103 Conn. 453, 468, 130 Atl. 899. The trial court did not err in denying the accused's motion to set aside the verdict.

In his brief, the accused has selected isolated parts of the charge and claims that the jury may have been prejudiced thereby. It is sufficient to dispose of the

claims of the accused in reference to the charge by the fact that the assignments of error in no way comply with the rules. The rules (Practice Book, § 362) require that all assignments of error shall be specific. The assignment of error in this case alleges that the court erred "in failing to charge the jury in an adequate and sufficient manner to fully present the issues and questions of law involved so that the jury could . . . return a verdict in accordance with the law." Such a general assignment does not comply with our rule and does not merit consideration. "It should be distinctly and specifically stated in what respects and how these general objections apply." *Beitler* v. *Rudkin*, 104 Conn. 404, 405, 133 Atl. 214; *State* v. *Tripp*, 84 Conn. 640, 643, 81 Atl. 247.

In the brief, a sentence and a part of a sentence are taken from the charge, without reference to the context or the remainder of the court's instructions, and claimed to have been erroneous. The trial court, in informing the jury that they were the exclusive judges of the credibility of witnesses, among other things observed: "Necessarily, gentlemen, if you find that there are any witnesses in this case who might have some motive for testifying as they have testified, either wholly or in part, you should take such a fact into consideration in weighing the testimony of such person, because in so far as it may be affected, of course, in so far as it is affected, it is less reliable." The jury could not have understood the whole sentence as informing them otherwise than if the jury found that any witness had a motive for testifying falsely they had a right to consider that in weighing his testimony, and the fact that the accused appearing as a witness has a vital interest in the result of the trial is not an exception to this rule. *State* v. *Schleifer*, 102 Conn. 708, 725, 130 Atl. 184.

At another point in the course of the charge, the court stated: "There is no evidence in the case which would excuse, justify, mitigate, or extenuate the shooting or slaying of Sergeant Kearney, so that if you find the accused not guilty of murder in the first degree, if you find that it was he who shot and killed Sergeant Kearney, he will be guilty of murder in the second degree, unless you also find that he was in such a condition of intoxication at the time he shot Sergeant Kearney that his mind could not conceive or entertain malice aforethought, as I have explained the meaning of that term to you, in which case he would be guilty of manslaughter." The brief of the accused seeks to take the first part out of this sentence but it must be considered with reference to what immediately followed and to the charge as a whole and it is evident that the jury could not have understood it as meaning otherwise than that there was no evidence in the case of a justifiable or excusable homicide to take from the killing of the officer the condemnation of an unlawful homicide; and the court then proceeded to instruct the jury with regard to three possible verdicts which they might return in case they found that the accused did the shooting. There is no indication in the finding that there was evidence of any circumstances of excuse or justification and the charge was not erroneous. *State* v. *Chapman*, 103 Conn. 453, 485, 130 Atl. 899. In their brief, counsel for the accused concede that the charge of the court as a whole was eminently fair to the accused. We do not find prejudicial error in the two passages to which reference is made in appellant's brief.

The accused assigns error in three rulings upon evidence. Lieutenant Bray of the Bridgeport police department was called as a witness by the State and testified that the accused made a confession to him

while under arrest in the city of Buffalo. In this con-
fession, the accused described breaking into Gilman's
Music Store and the shooting of the police officer which
occurred on Golden Hill Street shortly thereafter.
After recounting in considerable detail his participa-
tion in these events, the accused stated that "before
the shooting of the officers, we broke into a gas station
on John Street near West Avenue." Objection was
directed to this concluding sentence of the claimed
confession, the substance of the objection having been
that it was immaterial and tended to prejudice the
accused by showing his participation in another crime
unconnected with the crime for which he was being
tried. The objection was properly overruled by the
court. The part of the confession to which the ob-
jection was specifically directed contained in itself an
admission of the shooting of the police officer; and
that admission would be unintelligible if the remainder
of the sentence were omitted. The entire narrative of
the accused so far as it bore upon the crime of which
he was charged was admissible, and the repetition of
all he said with reference to that crime cannot be con-
sidered as an attempt on the part of the State to prove
an independent and distinct offense. *Commonwealth*
v. *Weston,* 297 Pa. St. 382, 147 Atl. 79, 82; *People* v.
*Loomis,* 178 N. Y. 400, 405, 70 N. E. 919, 921; 4 Wig-
more, Evidence (2d Ed.) § 2100. "That evidence
tends to prove the commission of other crimes by the
accused does not render it inadmissible if it is other-
wise relevant and material." *State* v. *Simborski,*
supra, 631; *State* v. *Chapman,* supra, 481.

A similar ruling was made by the court in admitting
the testimony of Sergeant Carroll, of the Bridgeport
police department, who testified that later at Buffalo
the accused repeated the confession previously made
to Lieutenant Bray; and stated in the same language

that prior to breaking and entering into the Gilman Music Store he had broken into a gasoline station on John Street near West Avenue. In rebuttal, the State called, as a witness, Daniel J. Hurley, who testified that he lived opposite a gasoline station on John Street and that about 11 o'clock in the evening of September 29th, from a window in his house, he was able to see the interior of the gasoline station; that he there saw a man moving about who resembled the accused, and that he had a bulge in his left hip pocket and described in some detail his movements, and the manner in which he gained entrance. This testimony was objected to as not proper rebuttal, but was admitted by the court over the objection of the accused. The accused had taken the stand as a witness in his own behalf and his contention was that he had been drinking intoxicating liquor that afternoon and evening and was so intoxicated that he had no recollection of what occurred at midnight that night when the policeman was shot. It was permissible for the State in rebuttal of this testimony of the accused to show that about an hour before the shooting, the accused had been acting as would a person in possession of his faculties. That he had happened to be so seen while robbing another building did not render the evidence inadmissible.

Prior to the trial, the accused moved the court for a change of venue on the ground that there had been such wide publicity of a nature so derogatory to him that a fair trial by an impartial jury could not be had in Fairfield County. The burden of showing this is upon the mover of the change of venue. *State* v. *Chapman,* supra, 470. The power to grant a change of venue is to be exercised with caution and rests in the court's sound discretion, which is final unless it appears clearly that it has exercised its discretion un-

reasonably. *State* v. *Cianflone,* 98 Conn. 454, 461, 120 Atl. 347; *State* v. *Luria,* 100 Conn. 207, 209, 123 Atl. 378. The only way by which the question could properly be presented to us as to whether the trial court erred in denying the motion would be upon a finding. *State* v. *Chin Lung,* 106 Conn. 701, 717, 139 Atl. 91. We have, however, examined the transcript of evidence offered in support of the motion and we cannot say that the trail court unreasonably exercised its discretion in denying it.

The principal contention of the accused on this appeal is that General Statutes, § 6494, which permits the State to appeal in a criminal case with the permission of the trial court, is in violation of § 9 of Article First of the Constitution of Connecticut and of § 1 of Article XIV of the amendments to the Constitution of the United States; his contention being that the jury on the first trial, having found him guilty of murder in the second degree, thereby acquitted him of the charge of murder in the first degree and that the appeal by the State to the Supreme Court of Errors and the new trial upon the same indictment for the same offense exposed him to double jeopardy in violation of these constitutional provisions. So far as the Constitution of Connecticut is concerned, it contains no such provision against double jeopardy, which is found in the constitutions of many States and in Article V of the amendments to the Constitution of the United States; and in *State* v. *Lee,* 65 Conn. 265, 30 Atl. 1110, this court held that the provisions of the General Statutes permitting an appeal by the State did not violate any provision of the Constitution of Connecticut. The basis of the reasoning of the court in that case is that there is but one jeopardy and one trial; that where material error is committed on a trial and a new trial is ordered by the appellate court upon

the State's appeal, the second trial is not a new case but is a legal disposal of the same original case tried in the first instance. It would be unprofitable to repeat what was said in that opinion which has been referred to by a great jurist as a "well-reasoned decision." *Kepner* v. *United States,* 195 U. S. 100, 135, 24 Sup. Ct. 797.

The substance of the appellant's claim is that our statute, permitting an appeal by the State in a criminal case, is in contravention of the Fourteenth Amendment to the Constitution of the United States, and that it abridges his privileges and immunities as a citizen of the United States and deprives him of life and liberty without due process of law. As the claim of the accused raises questions as to rights secured under the provisions of the Constitution of the United States, we look to the decisions of the Supreme Court of the United States for guidance as to the proper construction of these provisions. In § 2 of Article IV of the Constitution of the United States, it is provided: "The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." In *Corfield* v. *Coryell,* 4 Wash. C. C. 371, 380, it was said that these expressions were confined "to those privileges and immunities which are . . . fundamental" and that "what these fundamental principles are, it would be more tedious than difficult to enumerate. They may all, however, be comprehended under the following general heads: protection by the government; . . . with the right to acquire and possess property of every kind, and to pursue and obtain happiness and safety; subject nevertheless to such restraints as the government may . . . prescribe for the general good of the whole." In *Ward* v. *Maryland,* 79 U. S. (12 Wall.) 418, 430, they were said to include "the right of a citizen of one State to pass into

any other State of the Union for the purpose of engaging in lawful commerce, trade, or business without molestation; to acquire personal property; to take and hold real estate; to maintain actions in the courts of the State; and to be exempt from any higher taxes or excises than are imposed by the State upon its own citizens."

In the *Slaughter-House Cases*, 83 U. S. (16 Wall.) 36, 75, these cases were quoted from at length, the court holding that the privileges and immunities guaranteed under the Fourteenth Amendment were of the same character as those guaranteed under the Fourth Article of the Constitution; and in *Colgate* v. *Harvey*, 296 U. S. 404, 431, 56 Sup. Ct. 252, 259, it was said: "The purpose of the pertinent clause in the Fourth Article was to require each state to accord equality of treatment to the citizens of other states in respect of the privileges and immunities of states citizenship. It has always been so interpreted. One purpose and effect of the privileges and immunities clause of the Fourteenth Amendment, read in the light of this interpretation, was to bridge the gap left in that Article so as also to safeguard citizens of the United States against any legislation of their own states having the effect of denying equality of treatment in respect of the exercise of their privileges of national citizenship in other states;" and, on page 429, it was said: "Under the Fourteenth Amendment, therefore, the simple inquiry is whether the privilege claimed is one which arises by virtue of national citizenship. If the privilege be of that character, no state can abridge it. No attempt has been made by the courts comprehensively to define the privileges and immunities which the Fourteenth Amendment thus protects." The privileges and immunities of citizens of the United States do not necessarily include all the rights protected by

the first eight amendments to the federal Constitution against the power of the federal government. *Maxwell* v. *Dow,* 176 U. S. 581, 597, 20 Sup. Ct. 448. It was held in this case that a trial by a jury of twelve in a state court was not a privilege or immunity of a citizen of the United States, and one might be tried by a jury of eight. In *Walker* v. *Sauvinet,* 92 U. S. 90, 92, it was determined that "a trial by jury in suits at common law pending in the state courts is not . . . a privilege or immunity of national citizenship, which the states are forbidden by the Fourteenth Amendment to abridge."

The requirement of "due process of law" is met if the trial is had according to the settled course of judicial proceedings. *Murray's Lessee* v. *Hoboken Land and Improvement Co.,* 59 U. S. (18 How.) 272, 280. "Due process of law is process due according to the law of the land. This process in the states is regulated by the law of the state." *Walker* v. *Sauvinet,* supra, 93. The term "due process of law" appearing in the Fourteenth Amendment of the Constitution of the United States does not require indictment by a grand jury in a capital case in a state court, and prosecution by information, when authorized by the state law, does not offend against this clause. *Hurtado* v. *California,* 110 U. S. 516, 533, 537, 4 Sup. Ct. 111.

The accused had the benefit of a fair and impartial trial in accordance with the settled course of judicial proceedings prevailing in this State. Our statute, which permits the State to appeal with the permission of the trial court, was first adopted in 1886 and has been in force for more than fifty years. As construed in *State* v. *Lee,* supra, 282, and *State* v. *Carabetta,* 106 Conn. 114, 116, 137 Atl. 394, we conclude that it does not subject the accused to double jeopardy or abridge his privileges and immunities as a citizen of the United

States, or deprive him of his life or liberty without "due process of law."—

There is no error.

In this opinion the other judges concurred.