STATE OF CONNECTICUT *v.* NELSON HARRIS

BALDWIN, C. J., KING, MURPHY, MELLITZ and SHEA, Js.

Argued May 5—decided July 6, 1960

*William L. Hadden, Louis Evans,* and *Joseph W. Bishop, Jr.,* of the New York bar, for the appellant (defendant).

*Abraham S. Ullman,* state's attorney, with whom, on the brief, was *Arthur T. Gorman,* assistant state's attorney, for the appellee (state).

KING, J. In a trial to the jury, the defendant was convicted of one count of theft and twenty-eight counts of embezzlement by agent.[1] The theft count and eight of the embezzlement counts involved funds of a Connecticut corporation known as Harris Developing Associates, Inc. Eighteen other counts of embezzlement involved funds of a Connecticut corporation known as Woodbridge Manor, Inc. The remaining two counts of embezzlement involved funds of two individuals, William Dukeshire and Mortimer Wallerstein; no assignment of error as to these two counts is pursued in the brief, and we therefore do not discuss them. *Martino* v. *Grace-New Haven Community Hospital,* 146 Conn. 735, 736, 148 A.2d 259. The defendant was the record owner of all but two shares of the capital stock of each corporation. Of those two shares, one was owned of record by the defendant's wife and the other by a daughter. The officers and directors of each corporation were the defendant, his wife and a daughter.

---

[1] "Sec. 53-355. EMBEZZLEMENT BY AGENT. Any . . . agent or attorney of any private corporation . . . or private individual, who . . . in any way appropriates to his own use or to the use of others, any of the goods, moneys, choses in action or property in his care or custody as such . . . agent or attorney, or any moneys received by him for the sale of such goods, choses in action or property, or collected by him as such . . . agent or attorney, with intent to defraud another, or, with like intent, makes any false entry upon any of their books, or keeps false books or entries of and concerning their business and affairs, shall be . . . [punished]."

One of the claims of proof of the defendant was that from the incorporation of the two corporations through August 26, 1956, that is, the period within which the embezzlements were claimed to have occurred, he owned beneficially all of the stock of each corporation. He assigns error in the failure of the court to give this request to charge: "If you find that [the defendant] was the owner of the beneficial interest in one hundred per cent of the stock of Harris Developing Associates, Inc., and Woodbridge Manor, Inc., then I charge you that his handling of the funds of either or both of these corporations cannot legally be held to be embezzlement. A person cannot embezzle from a corporation where he is the owner of one hundred per cent of the capital stock." The court at several points in its charge reiterated the essential elements of the crime of embezzlement, including the requirement, here, that the funds involved belong to the corporations the defendant was charged with embezzling from. See *State* v. *Parker,* 112 Conn. 39, 52, 151 A. 325; *State* v. *Serkau,* 128 Conn. 153, 158, 20 A.2d 725. The court also charged fully as to the necessity of there being an intent to defraud another of his property. If, because of the defendant's ownership of the stock in either corporation or for any other reason, and however mistakenly, he honestly believed that he had a right to take the funds of the corporation, the jury could not, in view of the absence of an intent to defraud as required under our statute, have convicted him under the charge as given. *State* v. *Lanyon,* 83 Conn. 449, 454, 76 A. 1095; *State* v. *Henderson,* 102 Conn. 658, 660, 129 A. 724; *State* v. *Parker,* supra; *State* v. *Schofield,* 114 Conn. 456, 458, 159 A. 285.

The defendant, however, claims that had the requested instruction been given, the jury, if they be-

lieved that he owned all of the stock of either corporation, actually or beneficially, would have been obliged to acquit him of embezzlement from that corporation even though they found that the state had proven that he had misappropriated the funds of the corporation with intent to defraud it. This in effect amounts to a claim that it is impossible for a person to embezzle from a corporation the stock in which is wholly owned by him because, despite the corporate entity, title to the corporate assets is in him. See *State* v. *Serkau,* supra; also cases such as *State* v. *Wilson,* 30 Conn. 500, 505. The crime of embezzlement by agent did not exist at common law and is purely statutory. *State* v. *Parker,* supra, 45. Section 53-355 is broad. It refers to "any private corporation" and to misappropriation "in any way." It contains no exception based on an accused's ownership, beneficial or outright, of any or all of the stock in the corporation. The defendant, in making his claim, is forced to, and does, ignore or by-pass the corporate entity. This he cannot do, in view of § 53-355. The property of the corporation was not his, regardless of who owned the corporate stock. See *Taylor* v. *Commonwealth,* 119 Ky. 731, 745, 75 S.W. 244. The corporation was an entity, separate and apart from its stockholders. *Humphrey* v. *Argraves,* 145 Conn. 350, 354, 143 A.2d 432; *Frank Amodio Moving & Storage Co.* v. *Connelly,* 144 Conn. 569, 572, 135 A.2d 737; *Kulukundis* v. *Dean Stores Holding Co.,* 132 Conn. 685, 689, 47 A.2d 183; *Swiss Cleaners, Inc.* v. *Danaher,* 129 Conn. 338, 345, 27 A.2d 806; *Hoffman Wall Paper Co.* v. *Hartford,* 114 Conn. 531, 534, 159 A. 346.

The defendant claims that he could have procured from the two other directors and stockholders, who were merely dummies, a vote giving himself all or

any part of the funds of the corporation and that he would then not have been subject to conviction for embezzlement, at least in the absence of proof of insolvency on the part of the corporation. From that premise he argues that it is an absurdity to hold that his failure to follow this formality could change the essential character of his action. The defendant's argument falls because of the invalidity of his premise. If in fact the defendant, with intent to defraud the corporation, misappropriated its funds "in any way," he would be guilty of embezzlement under our statute. This would be true even though he had taken the precaution of procuring a vote of the board of directors or of the stockholders, or of both, purporting to authorize the misappropriation. Had the defendant followed such a course, it might, as a practical matter, have been very difficult for the state to prove the requisite criminal intent to defraud. But if the state had succeeded in so doing, the vote of the two directors and stockholders claimed by the defendant to be dummies, and to have merely a naked legal title to the corporate stock which stood in their names, would not render impossible the conviction of the defendant for embezzlement. He stresses the effect of the existence of § 33-27 of the General Statutes (repealed by Public Acts 1959, No. 618, § 137, effective Jan. 1, 1961), which prescribes a criminal penalty in the case of any director who votes to "pay any dividend or make any other distribution of . . . [a corporation's] assets except from its net profits or actual surplus, unless in accordance with the law allowing the reduction of stock, or upon the dissolution of the corporation." The essential elements of a violation of that statute obviously differ widely from those of the crime of embezzlement. Section 33-27 cannot be

construed as negating the possibility of a conviction of embezzlement in the case of the defendant. This would be true even had he utilized the subterfuge of a vote of authority from himself and the dummy directors. If the essential elements of embezzlement are present, the crime is established, regardless of the ingenuity employed in its perpetration.

The defendant chose to, and did, organize the two corporations, and he conducted his affairs through them, thereby enjoying the benefits and protection of corporate operation of his business. He cannot now, when it suits his purpose, brush aside the corporate entity and claim that the corporate funds are his own private funds to do with as he pleases. *Frank Amodio Moving & Storage Co.* v. *Connelly,* supra. Cases such as *Davis* v. *United States,* 226 F.2d 331, 335, *Currier* v. *United States,* 166 F.2d 346, 348, and *Drybrough* v. *Commissioner of Internal Revenue,* 238 F.2d 735, 738, upon which the defendant lays great stress, do not seem to us to be in point. They are concerned with income tax liability, criminal and civil, under the internal revenue laws. They have nothing to do with the proper construction of our embezzlement statute, nor do they hold that anyone owning all the stock of a corporation can treat the corporate funds as his own and help himself to them with impunity. If, and to the extent that, the cases in question are authority for any such proposition, and we are convinced that they are not, we could not follow them. If the defendant, with the requisite intent to defraud, misappropriated the funds of either corporation, he was guilty of embezzlement under our statute, and this would be so regardless of who owned the corporate stock. This in effect was held in *State* v. *Stites,* 5 Utah 2d 101, 103, 297 P.2d 227. The court did

not err in refusing to give the charge requested.

Upon the request of the defendant, a lawyer of many years' standing, a number of interviews with the state's attorney were arranged for, and held, prior to the actual institution of criminal proceedings. The responsibility for this request was not assumed by the defendant's counsel, who insisted that the defendant himself make the decision. The purpose of the interviews was to enable the defendant to present his version of his activities to the state's attorney in the hope that it would satisfy the latter that they had not been criminal and that consequently there was no justification for the institution of a criminal prosecution. It was fully understood by the defendant and his attorneys, prior to these conferences, that the state's attorney felt that the facts, as uncovered in his investigation, indicated a strong case requiring prosecution. It was also appreciated that the defendant would run the risk that in the course of the conferences he might disclose to the state's attorney information of which the latter had theretofore been unaware and that the state's case might thereby be strengthened. Present at the conferences, which occupied twelve or fifteen hours in all and took place on about six occasions, were the state's attorney, the assistant state's attorney, the county detective, the defendant's attorneys and, on two or more occasions, the defendant himself.

During the course of the trial, the state's attorney called the county detective as a witness in rebuttal and asked him as to certain statements made by the defendant during the conferences. These statements were claimed to be inconsistent with the defendant's testimony as a witness on his trial and admissible under the rule of cases such as *State* v. *Walters,* 145 Conn. 60, 67, 138 A.2d 786. The defendant objected

on the ground that whatever he had said to the state's attorney was privileged under the rule of *State* v. *Phelps,* Kirby 282. Wigmore suggests that "[a] communication from an *accused person* [to a state's attorney], made with knowledge of the official's status, is privileged, as that of an informer, . . . so far as it relates to *third persons,* but no farther." 8 Wigmore, Evidence (3d Ed.) § 2375, p. 758. Here, the defendant was not occupying the position of an informer, nor did he relate information concerning any third person. He was occupying the position, and only the position, of one accused, or about to be accused, of a serious crime, who, for his own advantage, solicited, and obtained, a series of conferences with the state's attorney. There was no deception, bad faith or unfair dealing on the part of the state's attorney. He did not seek the conferences. The defendant was promised nothing more than a sympathetic hearing, which he was given. Whatever he said was clearly voluntary. The privilege, as far as there was any, was not that of the defendant but of the state's attorney, under the rule of *State* v. *Zimnaruk,* 128 Conn. 124, 127, 20 A.2d 613.

There was no relationship of attorney and client between the defendant and the state's attorney, nor do the reasons according a client a privilege in that relationship have any application here. *Goddard* v. *Gardner,* 28 Conn. 172, 174. This is true quite apart from the fact that the county detective was openly present when the defendant made the statements admitted in evidence. Ibid. There was testimony that the state's attorney took notes during the course of one of the conferences. After two of them, the county detective dictated notes which were typed. There was no justification for keeping from the jury inconsistent statements made by the defendant un-

der these circumstances. This view appears to be in accord with the general rule. A collection of the relatively few cases on the point may be found in 9 A.L.R. 1099, 1119, supplemented by 59 A.L.R. 1555, 1560. It is difficult to determine, from the brief report in Kirby, just what the situation in *State* v. *Phelps,* supra, was. But if, and to the extent that, the case is precedent for excluding the testimony of the county detective, we cannot follow it. It is the duty of a state's attorney to introduce all of the evidence which tends to aid the court in ascertaining the truth. *State* v. *Zimnaruk,* supra. There was no error in admitting the evidence as to the defendant's inconsistent statements.

The court directed a verdict of not guilty on twenty-two of the counts of embezzlement. There were a large number of exhibits in the case, and the defendant complains that some which related solely to those counts were erroneously allowed to go to the jury. In support of this claim he cites *Brown* v. *State,* 128 Fla. 762, 175 So. 515, clarified in 130 Fla. 479, 178 So. 153. He made no objection at the time, although his counsel were given full opportunity to check the exhibits before they were sent to the jury, in accordance with the standard practice in Connecticut. *Brown* v. *State,* supra, gives no support to the defendant's position in the light of our practice with respect to the checking of exhibits by counsel. In any event, there was no error by reason of the failure of the court itself to sort the exhibits and, in the absence of any request from the defendant, to withhold from the jury those concerned only with the counts as to which a verdict in his favor had been directed. *State* v. *Tucker,* 75 Conn. 201, 203, 52 A. 741; see *Yavis* v. *Sullivan,* 137 Conn. 253, 264, 76 A.2d 99.

The final claim pursued in the defendant's brief relates to rulings on evidence and complains of the admission of "quantities of evidence" tending to show misappropriations by the defendant which were not included in any count in the information and which he claims were not connected with any count. Of course it is correct, as claimed by the defendant, that "evidence that one accused of a certain crime has committed other similar but unconnected crimes" is ordinarily inadmissible in proof of the crime charged; *State* v. *Camera,* 132 Conn. 247, 251, 43 A.2d 664, and cases cited; although it should not be overlooked that the rule has certain apparent exceptions, as is explained in cases such as *State* v. *Chapman,* 103 Conn. 453, 482, 130 A. 899; *State* v. *Palko,* 122 Conn. 529, 536, 191 A. 320; and *State* v. *Barnes,* 132 Conn. 370, 372, 44 A.2d 708.

A claimed evidential ruling particularly stressed relates to the so-called Curcio transaction. A claim of error in the admission of evidence is to be tested by the finding. Practice Book § 405; *Facey* v. *Merkle,* 146 Conn. 129, 131, 148 A.2d 261. The paragraph of the finding referred to in the defendant's brief is a mere claim of proof by the state, included with the other claims of proof in a jury case in accordance with § 400 of the Practice Book. The paragraph fails to show any evidential ruling. See Practice Book § 405. To avoid any possible injustice, we have examined other portions of the record properly before us. It is apparent that evidence was offered to show an association between the defendant and Carl Barone, a builder, in the construction and sale of houses in a development. This association immediately antedated the formation of the two corporations whose funds are involved in this case. The development operations were subsequently con-

ducted through these corporations. The evidence was part of a background which it was highly desirable, if not essential, for the jury to have in order to follow and understand the complex operations of the defendant. "That evidence tends to prove the commission of other crimes by the accused does not render it inadmissible if it is otherwise relevant and material." *State* v. *Simborski,* 120 Conn. 624, 631, 182 A. 221; *State* v. *Palko,* supra. Had objection been made to the admission of this evidence, a ruling admitting it would not have been erroneous.

The defendant's brief makes passing mention of two other categories of evidential rulings, referring to pages of the record containing paragraphs, and portions of paragraphs, of the part of the finding purporting to set forth rulings on evidence. While these paragraphs fail to give a proper explanatory setting of the rulings, and in a number of instances combine several separate and distinct rulings in a single paragraph, contrary to the provisions of Practice Book § 405, we have nevertheless examined them. In the first place, they do not disclose evidence of the commission by the defendant of other, unrelated, crimes. One set of rulings admitted in evidence a certificate of incorporation, and a certificate of organization, of Linda Homes, Inc., a third corporation. While it was not one of the two corporations the funds of which the defendant is charged with having embezzled, the three were interrelated, and Linda Homes, Inc., was engaged in real estate transactions with the other two. The evidence was admissible, apart from any other ground, because it was helpful to an understanding of the corporate manipulations of the defendant which the state was in the process of proving and which, indeed, the de-

fendant himself to some extent claimed had occurred.

The second category of rulings seems to embrace those made during the examination of Carl Barone. The evidence related to certain transactions between Barone and Harris Developing Associates, Inc. It included testimony that Barone, during the period of the claimed embezzlements and at the defendant's behest, borrowed money from a supplier of appliances, Porto Brothers Service, Inc., to enable Harris Developing Associates, Inc., to meet its pay roll. In view of the close relationship between Barone and Harris, it at least was within the court's discretion to admit this evidence of their transactions with Harris Developing Associates, Inc., of which the defendant claimed to be, at least beneficially, the sole owner, and for the embezzlement of the funds of which he was on trial. In a prosecution for embezzlement such as this, the range of relevant evidence is wide, especially as it bears on the essential element of an intent to defraud, which involves a state of mind and can generally be proved only by circumstantial evidence. *State* v. *Parker,* 112 Conn. 39, 54, 151 A. 325. But that aside, the complexity of the defendant's operations and his use in his activities of various corporate entities made it especially necessary to admit such explanatory evidence as was essential for the jury accurately to understand, and fairly to try, the case against him. The rulings were not erroneous.

There is no error.

In this opinion the other judges concurred.