******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

## STATE OF CONNECTICUT *v.* DAVID VALLE
### (AC 46735)

Alvord, Clark and Wilson, Js.

*Syllabus*

Convicted of the crimes of cruelty to animals, interfering with an officer, and threatening in the second degree, the defendant appealed. After the state had rested its case, the trial court granted the defendant's motion for a judgment of acquittal with respect to various other criminal charges. He claimed, inter alia, that the court erred in submitting to the jury exhibits that were relevant only to charges that had been dismissed after the court granted his motion for a judgment of acquittal. *Held*:

This court declined to review the defendant's unpreserved claim that the trial court erred by permitting the jury to review exhibits during its deliberations that related only to charges of which he had been acquitted, as, although the defendant generally objected to the court's order that all full exhibits would go to the jury for deliberation, he did not identify the exhibits he claimed should have been excluded and did not articulate the factual or legal basis for excluding those exhibits, and nothing in the record supported the defendant's claim that he was not afforded an opportunity to properly preserve his objection for appellate review.

This court rejected the defendant's unpreserved claim that the statute (§ 53-247 (a)) prohibiting conduct constituting cruelty to animals was unconstitutionally vague as applied to his conduct, the defendant's claim having failed under the third prong of *State* v. *Golding* (213 Conn. 233) because no constitutional violation existed, as the defendant's conduct, specifically, his conduct in confining one dog to a dirty, unsanitary, outdoor cage and in failing to provide that dog and another dog with sufficient food or water for several weeks or months at a time, fell within the unmistakable core of conduct prohibited by § 53-247 (a).

Argued October 7—officially released December 23, 2025

*Procedural History*

Substitute information charging the defendant with five counts of the crime of cruelty to animals, and with one count each of the crimes of interfering with an officer, reckless burning, threatening in the second degree, and tampering with physical evidence, brought to the Superior Court in the judicial district of Fairfield, geographical area number two, and tried to the jury

before *Reid, J.*; thereafter, the court granted the defendant's motion for a judgment of acquittal as to three counts of the charge of cruelty to animals and as to the charges of reckless burning and tampering with physical evidence; verdict and judgment of guilty of two counts of the crime of cruelty to animals, and of the crimes of threatening in the second degree and interfering with an officer, from which the defendant appealed to this court. *Affirmed.*

*Stephan E. Seeger*, with whom was *Igor G. Kuperman*, for the appellant (defendant).

*Danielle Koch*, assistant state's attorney, with whom, on the brief, were *Joseph Corradino*, state's attorney, and *Justina L. Moore*, senior assistant state's attorney, for the appellee (state).

*Opinion*

CLARK, J. The defendant, David Valle, appeals from the judgment of conviction, rendered following a jury trial, of two counts of cruelty to animals in violation of General Statutes § 53-247 (a),[1] one count of threatening in the second degree in violation of General Statutes § 53a-62 (a),[2] and one count of interfering with an officer in violation of General Statutes (Rev. to 2019) § 53a-167a.[3] On appeal, the defendant claims that (1) the trial

[1] General Statutes § 53-247 (a) provides in relevant part: "Any person who . . . having impounded or confined any animal, fails to give such animal proper care or . . . fails to supply any such animal with wholesome air, food and water, or . . . having charge or custody of any animal . . . fails to provide it with proper food, drink or protection from the weather . . . shall, for a first offense, be fined not more than one thousand dollars or imprisoned not more than one year or both, and for each subsequent offense, shall be guilty of a class D felony."

[2] General Statutes § 53a-62 (a) provides in relevant part: "A person is guilty of threatening in the second degree when: (1) By physical threat, such person intentionally places or attempts to place another person in fear of imminent serious physical injury, (2) (A) such person threatens to commit any crime of violence with the intent to terrorize another person . . . ."

[3] General Statutes (Rev. to 2019) § 53a-167a provides in relevant part: "A person is guilty of interfering with an officer when such person obstructs,

court erred in submitting to the jury exhibits that were relevant only to counts that had been dismissed after the court granted his motion for judgment of acquittal and (2) § 53-247 (a) is unconstitutionally vague as applied to the facts of this case. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On the evening of December 1, 2020, the Bridgeport Fire Department (fire department) was dispatched to the vicinity of Wayne Street following a report of smoke in the area. The responding firefighters noticed smoke coming from behind a stockade fence at 675 Wayne Street. Scott Boris, then a captain with the fire department, entered the property to investigate and saw a three-sided shedlike structure aflame with smoke billowing from the top. When Boris opened the gate to the fence, a "tiny and frail," "unhealthy looking" dog, later identified as Sheeba, ran toward him. Boris also noticed a kennel behind the shed with another unhealthy looking dog, later identified as Honey, locked inside.

As the fire department was attempting to extinguish the fire, a man exited the residence and told Boris that he was burning wood and did not want the fire extinguished.[4] Boris explained to the man that a Bridgeport city ordinance prohibited such fires and that the fire department was required to extinguish it. The man went back inside the house and Boris called the Bridgeport Police Department (police department) for assistance. A short time later, the same man came back outside and, now agitated and yelling, told Boris that the homeowner was on his way and wanted the fire department off the property.

resists, hinders or endangers any peace officer . . . or firefighter in the performance of such peace officer's . . . or firefighter's duties."

[4] The man who first approached the fire department and asked them to leave the premises was not identified during trial.

Shortly thereafter, the defendant drove at a high rate of speed toward the residence, slammed on his brakes, jumped out of the vehicle, and charged toward the firefighters. The defendant "got right into [Boris'] face" and said that the shed was his smokehouse, that he was smoking a deer inside of it, and that he would "put a bullet in every one of [the firefighters'] heads if [they] didn't get off his property." The defendant also attempted to pull the hose away from the firefighters as they attempted to extinguish the fire. While the confrontation between the defendant and the firefighters was ongoing, the police arrived and detained the defendant. During the ensuing investigation, Hiram Velez, a fire inspector for the city of Bridgeport, found three deceased dogs inside the shed amidst a pile of burned trash and other debris.

The defendant was arrested and, by way of an amended long form information, charged with one count of interfering with an officer in violation of General Statutes (Rev. to 2019) § 53a-167a and five counts of cruelty to animals in violation of § 53-247 (a)—two related to his treatment of Honey and Sheeba, and three related to the deceased dogs found in the shed. The defendant was also charged with one count of reckless burning in violation of General Statutes § 53a-114,[5] one count of threatening in violation of § 53a-62 (a) (3), and one count of tampering with physical evidence in violation of General Statutes § 53a-155 (a) (1).[6] On May

[5] General Statutes § 53a-114 provides in relevant part: "(a) A person is guilty of reckless burning when he intentionally starts a fire or causes an explosion, whether on his own property or another's, and thereby recklessly places a building . . . of another in danger of destruction or damage."

[6] General Statutes § 53a-155 (a) (1) provides: "A person is guilty of tampering with or fabricating physical evidence if, believing that a criminal investigation conducted by a law enforcement agency or an official proceeding is pending, or about to be instituted, such person . . . [a]lters, destroys, conceals or removes any record, document or thing with purpose to impair its verity or availability in such criminal investigation or official proceeding . . . ."

10, 2023, after the state rested, the defendant made an oral motion for judgment of acquittal with respect to the three counts of animal cruelty related to the deceased dogs, as well as the counts charging him with reckless burning and tampering with physical evidence. The defendant argued that it was undisputed that he was not on the property when the fire was discovered and that there was not sufficient evidence to support a finding beyond a reasonable doubt that he started the fire or that he had any connection to the three deceased dogs that were found in the shed. The court, *Reid, J.*, granted the defendant's motion the following morning. On May 12, 2023, the jury found the defendant guilty of the remaining counts of the amended long form information. On July 14, 2023, the court imposed a total effective sentence of 1456 days of incarceration, execution suspended after fourteen months, followed by three years of probation. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that the court erred in submitting to the jury exhibits that were relevant only to counts that had been dismissed after the court granted his motion for a judgment of acquittal. The defendant contends that certain exhibits that had been admitted during the state's case-in-chief related only to the charges of which he had been acquitted and that the court erred by permitting the jury to review those exhibits during its deliberations. The state contends that the defendant failed to preserve his claim and, in the alternative, that the court did not err by submitting to the jury all exhibits that had been admitted into evidence. We conclude that the defendant failed to preserve his claim.

The following additional facts and procedural history are relevant to this claim. During trial, twenty-five state

exhibits and three defense exhibits were admitted into evidence. Among the exhibits submitted by the state were photographs of the charred contents of the shed, including the three deceased dogs found therein, and body worn camera footage which depicts, among other things, the investigating officers discussing whether the defendant had "burned a dog in [the shed]." The defendant's exhibits included Velez' fire investigation report documenting his findings, which contains a paragraph describing his discovery of the deceased dogs in the shed. The defendant's exhibits also included a police incident report completed by an animal control officer, Jennifer Wallace, which contains detailed descriptions of the condition of the three deceased dogs, as well as Sheeba, Honey, and the inside of the kennel in which Honey was found. At the time the court granted the defendant's motion for a judgment of acquittal, the defendant did not move to strike or otherwise limit the jury's consideration of any of the exhibits. Additionally, on May 11 and 12, 2023, the court held a charging conference to discuss proposed jury instructions, and the defendant did not request that the court give any instruction limiting the jury's consideration of the exhibits.

On the morning of May 12, 2023, the parties presented closing argument and, thereafter, the court instructed the jury in accordance with the proposed charges that were discussed during the charging conference. After the jury retired to the deliberation room but before it began deliberating, the following colloquy between the court and defense counsel ensued:

"[Defense Counsel]: Your Honor, I have a question. . . . What I'm wondering is, the exhibits, do they include only the exhibits with relation to these charges or are they all of the exhibits including those (inaudible). . . .

"The Court: All the full exhibits will . . . go to the jury.

"[Defense Counsel]: Is that the usual way to handle it?

"The Court: Well . . . one, there's been no . . . motions, or anything presented to the court. Two, there's not been any specific delineation as to what specific exhibits were provided for what specific charges and, therefore, the ruling is that all exhibits that were admitted rightfully as full exhibits at trial either with or without objection will be exhibits that go to the jury room.

"[Defense Counsel]: Okay. I'm going to object to that because I don't know what (inaudible) is or . . . what law there may be or any—

"The Court: I didn't hear you, sir.

"[Defense Counsel]: I'm just taking an objection to it.

"The Court: I'll note your objection.

"[Defense Counsel]: Okay.

"The Court: All the full exhibits will go to the jury room."

Thereafter, the court gave counsel for both parties the opportunity to review the exhibits before they were submitted to the jury. The court then asked if the parties had reviewed the exhibits and were "satisfied that all of the full exhibits [were] there." Defense counsel did not identify which exhibits he claimed should not be submitted to the jury or otherwise raise any further objection. Later that day, the jury returned its verdict finding the defendant guilty of two counts of cruelty to animals, one count of threatening in the second degree, and one count of interfering with an officer.

On appeal, the defendant acknowledges that Practice Book § 42-23 (a) provides in relevant part that "[t]he

judicial authority shall submit to the jury . . . (2) [a]ll exhibits received in evidence." The defendant also does not dispute that the court complied with the express terms of § 42-23 (a) by submitting to the jury all exhibits that had been admitted as full. He argues, however, that "our Supreme Court has long ago recognized that jurors should not be allowed to consider in deliberation materials not pertaining to the charges at hand."

In support of his claim, the defendant relies on *State* v. *Harris*, 147 Conn. 589, 164 A.2d 399 (1960). In that case, after the trial court directed a verdict of not guilty of twenty-two counts of embezzlement; id., 598; the defendant was convicted of twenty-eight counts of embezzlement and one count of theft. Id., 591. On appeal, the defendant claimed, for the first time, that the court should not have submitted to the jury exhibits that related only to the counts of which he had been acquitted. Id., 598. Our Supreme Court rejected that claim, noting that the defendant had "made no objection at the time, although his counsel were given full opportunity to check the exhibits before they were sent to the jury . . . . In any event, there was no error by reason of the failure of the court itself to sort the exhibits and, in the absence of any request from the defendant, to withhold from the jury those concerned only with the counts as to which a verdict in his favor had been directed." (Citation omitted.) Id. The defendant argues that, "[u]nlike *Harris*, defense counsel in this case *did* object to and raise the issue of exhibits that no longer related to the remaining charges," and that "the graphic nature of some of these exhibits, combined with the allegations of animal cruelty, would have misled the jury into using evidence of one type of misconduct (three burned dogs) . . . as evidence of his cruelty [to] the two live dogs." (Emphasis in original.)

In response, the state argues that the defendant failed to preserve his claim for appeal because he did not

identify either the factual or legal basis for his objection before the trial court. Specifically, the state contends that, "although generally objecting to the order that 'all' full exhibits would go to the jury room for deliberation, the defendant never specified to the trial court which exhibits his objection pertained to, nor did he explain the basis upon which his appeal relies . . . even after having the opportunity to examine all of the full exhibits before their submission to the jury room." The state argues, therefore, that "the record is inadequate insofar as it was unknown to the trial court which exhibits the defendant claimed should not go to the jury and what the legal basis for that objection was." We agree with the state.

"It is axiomatic that the appellate tribunals of this state are not bound to consider claims of law that are not distinctly raised at trial." *State* v. *Ramon A. G.*, 336 Conn. 386, 395, 246 A.3d 481 (2020); see Practice Book § 60-5. "The requirement that [a] claim be raised distinctly means that it must be so stated as to bring to the attention of the court the *precise* matter on which its decision is being asked. . . . [It must] alert the trial court to the specific deficiency now claimed on appeal." (Emphasis in original; internal quotation marks omitted.) *State* v. *Lueders*, 225 Conn. App. 612, 639, 317 A.3d 69, cert. denied, 349 Conn. 920, 321 A.3d 402 (2024). "In objecting to evidence, counsel must properly articulate the basis of the objection so as to apprise the trial court of the precise nature of the objection and its real purpose, in order to form an adequate basis for a reviewable ruling. . . . Once counsel states the authority and ground of his objection, *any appeal will be limited to the ground asserted*." (Emphasis added; internal quotation marks omitted.) *State* v. *Miller*, 229 Conn. App. 435, 449, 327 A.3d 448 (2024), cert. denied, 351 Conn. 909, 330 A.3d 880 (2025).

"[B]ecause the sine qua non of preservation is fair notice . . . the determination of whether a claim has been properly preserved will depend on a careful review of the record to ascertain whether the claim on appeal was articulated below with sufficient clarity to place the trial court on reasonable notice of that very same claim. . . . These requirements are not simply formalities. They serve to alert the trial court to potential error while there is still time for the court to act. . . . Assigning error to [the trial court's] rulings on the basis of objections never raised at trial unfairly subjects the court and the opposing party to trial by ambush." (Citation omitted; internal quotation marks omitted.) *State* v. *Ramon A. G.*, supra, 336 Conn. 395.

In the present case, our review of the record leads us to conclude that the defendant did not adequately raise his claim at trial because he did not identify the exhibits he now claims should have been excluded from the jury during deliberations and did not articulate the legal or factual basis for excluding those exhibits. As explained previously, Practice Book § 42-23 expressly provides that, "(a) [t]he judicial authority shall submit to the jury . . . (2) [a]ll exhibits received in evidence." Although the defendant indicated that he objected to the court submitting all of the exhibits that had been admitted into evidence to the jury, he did not articulate the legal basis for his objection or identify which specific exhibits he believed should be withheld from the jury. In fact, after the court stated that, in accordance with § 42-23 (a) (2), all exhibits admitted into evidence would be submitted to the jury, the defendant responded that he objected simply because he "[did not] know . . . what law there may be" that pertained to that issue.

As we repeatedly have recognized, "[t]he purpose of our preservation requirements is to ensure fair notice of a party's claims to both the trial court and opposing

parties," so as "to alert the trial court to potential error while there is still time for the court to act." (Internal quotation marks omitted.) *Guddo* v. *Guddo*, 185 Conn. App. 283, 287, 196 A.3d 1246 (2018). For that reason, "[w]e have consistently declined to review claims based on a ground different from that raised in the trial court." (Internal quotation marks omitted.) *Connecticut Bank & Trust Co.* v. *Munsill-Borden Mansion, LLC*, 147 Conn. App. 30, 38, 81 A.3d 266 (2013). See, e.g., *State* v. *Roberts*, 224 Conn. App. 471, 490, 312 A.3d 1086 (defendant's general objection that General Statutes § 29-35, which prohibits carrying pistol or revolver without permit outside of home, violated second amendment to United States constitution was insufficient to preserve specific claim that statute was unconstitutional as applied to him because, as Ohio resident without permit from home state, he had no way to obtain permit under Connecticut law), cert. denied, 349 Conn. 912, 314 A.3d 602 (2024); *Connecticut Bank & Trust Co.* v. *Munsill-Borden Mansion, LLC*, supra, 38 ("[t]he defendants cannot challenge the court's evidentiary rulings by arguing that evidence was admissible [on grounds] that were never asserted during trial"). Because "any appeal will be limited to the ground asserted" at trial; (internal quotation marks omitted) *State* v. *Miller*, supra, 229 Conn. App. 449; it is axiomatic that a party cannot preserve a claim for appeal simply by asserting a general objection without identifying *any* legal ground therefor. Allowing the defendant to raise a claim on appeal after he failed to articulate any legal basis for his objection at trial "would encourage trial by ambuscade, which is unfair to both the trial court and the opposing party." (Internal quotation marks omitted.) *Guddo* v. *Guddo*, supra, 287.

We disagree with the defendant's contention that the court overruled his objection "[b]efore counsel could even begin to specify the exhibits by number," thereby

rendering futile any attempt to identify the specific factual and legal basis for his claim. To the contrary, our review of the record reveals that the court provided the defendant with ample opportunity to articulate a factual and legal basis for his objection. Defense counsel first raised the issue by inquiring whether submitting all full exhibits to the jury was "the usual way to handle it," to which the court responded by noting that the defendant had not filed any motion to limit the jury's consideration of any of the exhibits or provided "any specific delineation as to what specific exhibits were provided for what specific charges . . . ." In response, defense counsel did not identify any legal basis for deviating from that practice or specify which exhibits he claimed should be withheld from the jury, but merely stated that he objected because he "[did not] know . . . what law there may be" about the issue. Immediately after the court overruled that objection, it provided the parties with an opportunity to review all of the exhibits before they were submitted to the jury. Even after he had the opportunity to review the exhibits, the defendant did not move to strike any of the exhibits or otherwise identify which exhibits he claimed were relevant only to the charges of which he had been acquitted. See, e.g., *State* v. *Anonymous (83-FG)*, 190 Conn. 715, 726–27, 463 A.2d 533 (1983) (concluding that trial court did not err by admitting exhibit that was relevant to dismissed charges where "defendant . . . never requested any restriction against the use of the exhibit as evidence upon the other two charges" and "made no motion to strike the exhibit"); *State* v. *Cain*, 25 Conn. App. 503, 525–26, 596 A.2d 449 (1991) (recognizing trial court's authority to strike exhibits from the record after granting motion for judgment of acquittal with respect to certain counts, but concluding that court did not err in refusing to strike exhibit that was relevant to remaining counts), aff'd, 223 Conn. 731, 613 A.2d 804

(1992). Moreover, our review of the record indicates that at least some of the exhibits that were admitted at trial—namely, Velez' fire investigation report and Wallace's police report—were relevant to the counts on which the court granted the defendant's motion for a judgment of acquittal *and* to the counts that remained. As the court recognized in *Harris*, it was the defendant's burden to adequately articulate his objection and identify the exhibits that he claimed were not relevant to the remaining counts, and "there was no error by reason of the failure of the court itself to sort the exhibits . . . ." *State* v. *Harris*, supra, 147 Conn. 598. Nothing in the record supports the defendant's argument that he was not afforded an opportunity to properly preserve his objection for appellate review. Accordingly, we decline to review the defendant's claim.

## II

The defendant also claims that § 53-247 (a) is unconstitutionally vague as applied to his conduct. Specifically, he contends that the statute does not provide sufficient notice of what conduct it prohibits because it "does not define 'proper care' or 'proper' food/drink/ protection from the weather." In addition, noting that the state relied on the testimony of two witnesses with specialized knowledge in the care of animals—namely, Wallace and Kelley Harpin, an emergency veterinarian—the defendant argues that "if it takes an [animal control officer] and/or a veterinarian to decipher that the dogs were not properly cared for or provided 'proper' food/drink/protection from the weather, anyone without specialized knowledge would be at risk of violating [§ 53-247 (a)]." We disagree.

The following additional facts and procedural history are relevant to the defendant's claim. The state presented evidence that the kennel in which Honey was found was made of plywood walls and a chain link gate

that did not provide protection from the elements. The gate was secured by a padlock that was either frozen or corroded shut and could not be opened with the keys provided by the defendant, so the police officers had to break the gate open. The floor of the kennel was made of concrete, which "was covered in urine and fecal staining that layered over itself," with "several piles of both fresh and old feces." Inside the kennel were two five gallon buckets, one of which was overturned and empty, and the other of which was upright with a small amount of water at the bottom that was beyond Honey's reach. Toward the back of the kennel there was "a little bit of bedding that . . . appeared damp and stained." Wallace testified that it was approximately 40 degrees that evening, and that Honey was so thin that "[y]ou could easily see her ribs from . . . standing outside of the kennel" and she "[did not] have long fur . . . [or] a lot of fat to be able to combat that sort of weather . . . ." She also testified that Sheeba "was notably skinny" with "protruding ribs [and a] very visible spine." Both dogs were shivering when they were found.

Harpin, who examined Honey and Sheeba after they were removed from the defendant's care, testified that Sheeba was emaciated and dehydrated and looked and smelled like she had never been bathed. Harpin also determined that Sheeba had recently given birth and was actively lactating, and it did not appear that she was receiving proper nutrition to support lactation. Honey was likewise emaciated and dehydrated and had dried feces stuck to her fur. Harpin testified that an ideal weight for Sheeba and Honey was approximately sixty pounds and that they weighed thirty and forty pounds, respectively, at the time they were examined. She further testified that it would take at least several weeks, if not months, of malnourishment for them to end up in the physical condition in which they were

found. Harpin also testified that both dogs exhibited symptoms of intestinal parasite infection, which suggests that they were not receiving regular veterinary care.

The defendant acknowledges that he did not preserve his vagueness claim before the trial court, but seeks review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015). "Under *Golding*, a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis in original; internal quotation marks omitted.) *State* v. *Hearl*, 182 Conn. App. 237, 265, 190 A.3d 42, cert. denied, 330 Conn. 903, 192 A.3d 425 (2018). The defendant's claim meets the first two prongs of *Golding* because the record is adequate for review and his claim that § 53-247 (a) is unconstitutionally vague implicates his right to due process. See id., 265–66; see also *State* v. *Josephs*, 328 Conn. 21, 30, 176 A.3d 542 (2018). We conclude, however, that the defendant's claim fails under the third prong of *Golding* because he has not demonstrated that the alleged constitutional violation exists.

"The determination of whether a statutory provision is unconstitutionally vague is a question of law over which we exercise de novo review. . . . The void for vagueness doctrine is a procedural due process concept that originally was derived from the guarantees of due

process contained in the fifth and fourteenth amendments to the United States constitution. . . . The constitutional injunction that is commonly referred to as the void for vagueness doctrine embodies two central precepts: the right to fair warning of the effect of a governing statute or regulation and the guarantee against standardless law enforcement." (Citation omitted; internal quotation marks omitted.) *State* v. *Hearl*, supra, 182 Conn. App. 266. "A statute . . . [that] forbids or requires conduct in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process. . . . Laws must give a person of ordinary intelligence a reasonable opportunity to know what is prohibited so that he may act accordingly." (Internal quotation marks omitted.) *Middletown* v. *Wagner*, 228 Conn. App. 265, 281, 325 A.3d 253 (2024).

"If the meaning of a statute can be fairly ascertained [it] will not be void for vagueness since [m]any statutes will have some inherent vagueness, for [i]n most English words and phrases there lurk uncertainties. . . . For statutes that do not implicate the especially sensitive concerns embodied in the first amendment, we determine the constitutionality of a statute under attack for vagueness by considering its applicability to the particular facts at issue." (Internal quotation marks omitted.) *State* v. *Hearl*, supra, 182 Conn. App. 266.

"A statute is not void for vagueness unless it clearly and unequivocally is unconstitutional, making every presumption in favor of its validity. . . . To demonstrate that [a statute] is unconstitutionally vague as applied to [him], the [defendant] therefore must . . . demonstrate beyond a reasonable doubt that [he] had inadequate notice of what was prohibited or that [he was] the [victim] of arbitrary and discriminatory

enforcement. . . . Unless a vagueness claim implicates the first amendment right to free speech, [a] defendant whose conduct clearly comes within a statute's unmistakable core of prohibited conduct may not challenge the statute because it is vague as applied to some hypothetical situation . . . ." (Internal quotation marks omitted.) *Middletown* v. *Wagner*, supra, 228 Conn. App. 281–82.

On the basis of our review of the record, we conclude that the defendant cannot prevail on his vagueness claim because his conduct fell within the "unmistakable core" of conduct prohibited by § 53-247 (a). (Internal quotation marks omitted.) Id., 282. As stated previously, § 53-247 (a) provides in relevant part: "Any person who . . . having impounded or confined any animal, fails to give such animal proper care or . . . fails to supply any such animal with wholesome air, food and water, or . . . having charge or custody of any animal . . . fails to provide it with proper food, drink or protection from the weather . . . shall, for a first offense, be fined not more than one thousand dollars or imprisoned not more than one year or both, and for each subsequent offense, shall be guilty of a class D felony." This court has recognized that "[t]he manifest purpose of [§ 53-247 (a)] is to ensure that no impounded or confined animal, including any dog, is exposed by its caretaker to conditions harmful to its health or well-being." *State* v. *Acker*, 160 Conn. App. 734, 746, 125 A.3d 1057 (2015), cert. denied, 320 Conn. 915, 131 A.3d 750 (2016). Although the term "proper care" may be "susceptible to a wide range of interpretations and could be vague as applied to some situations"; (internal quotation marks omitted) *State ex rel. Gregan* v. *Koczur*, 287 Conn. 145, 157, 947 A.2d 282 (2008); conduct that "places an animal . . . at such a risk of illness or physical harm that it begins to exhibit the visible signs of such illness or harm clearly lies at the statute's unmistakable core of

prohibited conduct . . . ." (Internal quotation marks omitted.) *State* v. *Acker*, supra, 747.

Here, the record contains ample evidence that a reasonable person in the defendant's position would have known that the condition in which the defendant kept Sheeba and Honey was harmful to their health and well-being. Honey was found in an outdoor kennel unprotected from the elements with a cold, urine and fecal stained concrete floor and damp bedding with no place that would provide a warm or clean sleeping area. Both dogs were described by multiple witnesses as emaciated, dehydrated, and unhealthy looking, with their ribs and spines visible. Harpin testified that the condition of Sheeba and Honey indicated that they had not been provided with proper nutrition for at least several weeks, if not months. A person of ordinary intelligence would know that confining dogs to a dirty, unsanitary, outdoor cage and failing to provide them with sufficient food or water for weeks or months at a time does not constitute proper care.

Moreover, and contrary to the defendant's contention, § 53-247 (a) is not unconstitutionally vague merely because the state relied in part on testimony from witnesses with specialized knowledge in the care of animals to establish that the defendant failed to provide Sheeba and Honey with proper care. As the state argues, there was ample photographic evidence and lay witness testimony regarding the condition of Sheeba and Honey to demonstrate that a reasonable person would know that the defendant did not provide the dogs with proper care. The state introduced photographs of both Sheeba and Honey to show their sickly condition, as well as photographs showing the unsanitary conditions of the kennel. In addition, multiple police officers and firefighters who responded to the scene testified that the dogs were visibly unhealthy. Boris testified that Sheeba was "tiny and frail" and that both dogs were

"very unhealthy looking." Velez testified that he saw one of the dogs and "it looked malnourished." Ronald Jersey, a sergeant with the police department, testified that one of the dogs was limping and that both dogs looked like "they needed to be fed" and "needed water." Another police officer, Natalia Luty, testified that Sheeba and Honey were "very skinny, malnourished . . . [and] shivering," that there were "feces all over the place," and that it "didn't look [like] a suitable [place] for a dog to be living in." The fact that these witnesses, none of whom testified to having any special skill or training in the care of animals, recognized the severity of the condition that Sheeba and Honey were in demonstrates that a person of ordinary intelligence would have known that the dogs were not properly cared for. Accordingly, we conclude that § 53-247 (a) is not unconstitutionally vague as applied to the facts of this case.

The judgment is affirmed.

In this opinion the other judges concurred.