******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# CITY OF MIDDLETOWN *v.* JUSTIN WAGNER ET AL.
## (AC 46940)

Bright, C. J., and Moll and Suarez, Js.

*Syllabus*

The defendant appealed from the trial court's judgment vesting in the plaintiff city ownership of certain dogs seized from a barn that was leased by the defendant and J, after the court found that the dogs were neglected. The defendant claimed, inter alia, that his rights under the fourth amendment to the United States constitution were violated because the evidence presented did not permit a finding that the police reasonably believed a warrantless entry was necessary to help an animal in immediate need of assistance. *Held*:

The trial court properly applied the applicable statute (§ 22-329a (a)) in denying the defendant's motion to suppress, and, because the evidence supported the court's finding that the plaintiff's animal control officers reasonably concluded that the dogs confined in the barn were in imminent harm and were neglected, the warrantless search did not violate the defendant's rights under the fourth amendment.

The applicable statutes (§§ 22-329a and 53-247) afforded the defendant and J adequate notice of the type of conduct prohibited thereby, and, accordingly, the defendant failed to demonstrate that the statutes were unconstitutionally vague.

This court declined to review the defendant's inadequately briefed claim that the police did not provide J with fair notice of the law because they failed to notify her that the lack of ventilation in the barn constituted neglect under § 22-329a.

The trial court applied the proper legal standard in determining that the dogs in the barn, having been neglected by the defendant and J, were properly subject to a warrantless seizure pursuant to § 22-329a (a) because it was clear from the plain language of § 53-247 that the neglect referred to in § 22-329a included neglect committed by individuals, not just neglect committed by commercial kennels or large breeding operations.

The evidence was sufficient to support the trial court's finding that the dogs in the barn were neglected because, pursuant to § 22-329a, the plaintiff demonstrated that the defendant and J failed to supply the dogs with wholesome air, food and water.

Argued March 7—officially released September 24, 2024

*Procedural History*

Verified petition seeking, inter alia, custody in favor of the plaintiff of certain animals taken from the defendants' possession that were allegedly neglected, and for other relief, brought to the Superior Court in the judicial district of Middlesex, where the court, *Shah, J.*, granted the plaintiff's application for an order to show cause, vesting temporary care and custody of the defendants' animals in the plaintiff; thereafter, the named defendant filed a motion for the return of his property and to suppress evidence; subsequently, the matter was tried to the court, *Hon. Edward S. Domnarski*, judge trial referee; judgment denying the named defendant's motion to suppress and granting the plaintiff's petition in part; thereafter, the court, *Hon. Edward S. Domnarski*, judge trial referee, denied the motion for a new trial filed by the named defendant, and the named defendant appealed to this court. *Affirmed.*

*Justin Wagner*, self-represented, the appellant (named defendant).

*Kori Termine Wisneski*, deputy general counsel, for the appellee (plaintiff).

*Opinion*

SUAREZ, J. In this animal welfare action, the self-represented defendant Justin Wagner[1] appeals from the judgment of the trial court vesting ownership of the dogs seized from a barn leased by the defendant and Destiny Jennings, together with the puppies subsequently born to those dogs, in the plaintiff, the city of Middletown, after it found that the dogs were neglected. On appeal, the defendant claims that (1) the trial court erred when it denied the defendant's motion to return property and suppress evidence obtained pursuant to

[1] Destiny Jennings was also named as a defendant in the underlying action but is not a party to this appeal. Accordingly, all references in this opinion to the defendant are to Wagner only. The defendant represented himself in both the trial court and this court.

a warrantless search and seizure of the property, (2) General Statutes §§ 22-329a and 53-247,[2] as applied to the defendant and Jennings, are void for vagueness, (3) the police did not provide Jennings with fair notice of the law, (4) the court did not apply the proper legal standard, and (5) there was insufficient evidence presented at the hearing to support a finding that the dogs in the barn were neglected.[3] We affirm the judgment of the trial court.

The following facts, as set forth in the court's August 21, 2023 memorandum of decision, and procedural history are relevant to our resolution of this appeal. "On

---

[2] Although § 22-329a has been amended by the legislature since the events underlying this appeal; see Public Acts 2023, No. 23-149, § 5; those amendments have no bearing on the merits of this appeal. In the interest of simplicity, unless otherwise indicated, we refer to the current revision of the statute.

Although § 53-247 has been amended by the legislature since the events underlying this appeal; see Public Acts 2023, No. 23-149, § 7; those amendments have no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of the statute.

[3] In his appellate brief, the defendant raised eight claims of error related to the trial court's August 21, 2023 judgment and two claims of error relating to the court's September 20, 2023 order denying his motion for a new trial. Specifically, the defendant characterized his claims of error as follows: (a) "[t]he court erred when it improperly denied [the defendant's] motion to return property and suppress evidence obtained pursuant to a warrantless search and seizure"; (b) "[t]he court erred in concluding [§] 22-329a authorized a warrantless search and seizure as [there is] no objective evidence on the record to support the court's conclusion that a reasonable officer would determine the dogs were both in 'imminent harm and neglected' "; (c) "the court was persuaded to erroneously apply [§ 22-329a], when it omitted the statutory requirement of being 'neglected' "; (d) "[t]he statutory language of [§] 53-247 is impermissibly vague when applied to the specific facts of the case"; (e) the "[p]olice . . . did not provide . . . Jennings with fair notice of law"; (f) "[t]he court abused its discretion when it applied an improper legal standard"; (g) "[t]he false statements provided by [Animal Control Officer Gail] Petras should be enough to grant the [defendant and Jennings] a new trial, as it's clear the false statements [affected] the court's conclusion"; (h) "[t]he new evidence, specifically the police body camera footage, should be enough to grant the [defendant and Jennings] a new trial"; (i) "[t]he [judgment] is not supported by the clear weight of the evidence, as there is no proof on the record of the dogs being deprived,

June 27, 2023, the Middletown Police Department responded to a domestic violence call at 797 Washington Street, [in] Middletown . . . . [The defendant] was arrested and taken into custody as a result of the incident. The police officers found the house on the premises to be in very poor condition. In response to these conditions, the police officers contacted the Department of Health, and the department condemned the home as unfit for human occupancy. The two dogs in the house, a German shepherd named Leanna and a golden retriever named Ruby, were placed with a neighbor that night. The neighbor later decided he could not care for the dogs, and he turned them over to an animal control officer.

"On the evening of June 27, 2023 . . . Jennings left the premises with her minor child to go stay with a relative in Massachusetts. Before she left the premises, Jennings informed the police officers that there were three dogs in a padlocked barn behind the house and that two of the dogs were pregnant. She told the police officers that she did not have a key for the padlock, and she would not allow the police officers to enter the barn. The next day, June 28, [2023, the defendant] was still in custody and Jennings had not returned to the

---

and because the substantial evidence contradicts the allegation of 'neglect' "; and (j) "[t]he court abused its discretion because the [judgment] is not supported by any empirical or objective evidence, nor by substantial evidence."

The defendant has not appealed from or amended his appeal to include the court's September 20, 2023 order denying his motion for a new trial. Accordingly, we will not review the defendant's claims related to the September 20, 2023 court order. See *OneWest Bank*, *N.A.* v. *Ceslik*, 202 Conn. App. 445, 465–66, 246 A.3d 18 (declining to review claim because defendant did not appeal from or amend appeal to include court's denial of motion related thereto), cert. denied, 336 Conn. 936, 249 A.3d 39 (2021). We have reframed the defendant's remaining claims, in some instances condensing closely related claims, to more accurately reflect the arguments in the defendant's brief. See, e.g., *Doe* v. *Quinnipiac University*, 218 Conn. App. 170, 173 n.4, 291 A.3d 153 (2023).

premises. The animal control officers were concerned about the conditions in the barn because it was their understanding that the dogs had not been tended to since the previous morning. The officers attempted to contact Jennings without success.

"On the afternoon of June 28, [2023] the weather was hot and humid with temperatures in the mid-eighties. The officers returned to the premises because they were concerned about the condition of the dogs locked inside the barn. The officers understood that the dogs in the barn had been left unattended for at least thirty-six hours. Police officers broke the door frame and entered the barn. It is undisputed that they did not have a warrant. The barn floor was covered in urine and feces and there was a strong smell of ammonia and feces that affected the officers' breathing. The officers reported a burning sensation in their eyes and noses from the strong smell in the barn. There was no active ventilation in the barn.

"There were five dogs in the barn, all German shepherds. [The defendant] later provided the names of the dogs and they can be referred to here. Deacon and Ruby were running free in the barn. Mitzi was chained to a post in the barn with two padlocks on her collar. Mitzi was confirmed to be pregnant. Because of the way Mitzi was chained, the officers were concerned that the dog could wrap the chain around the post and be strangled. These three dogs did not have access to water or food.

"Two other German shepherds, Luna and Lily, both pregnant, were located within a fenced off area of the barn. Lily had an injury above her eye. These two dogs did not have access to food, they did have access to water. The fur on the dogs was wet and matted and smelled of urine. All five dogs were taken into the custody of the animal control officer. After they were taken into custody, the three pregnant German shepherds

delivered a total of twenty-two puppies, of which, nineteen have survived.

"On [June] 30, 2023, an animal control officer also took custody of three corgi puppies, approximately ten weeks old, that were kept in the basement of the house. The names of the puppies were not part of the evidence. Jennings did not inform the animal control officers of these puppies before she left the premises. These puppies were left unattended until Jennings asked her neighbor to retrieve them. The neighbor turned the puppies over to animal control on June 30, 2023."

On July 11, 2023, the plaintiff, pursuant to § 22-329a, filed an application for an order to show cause and a verified petition as to the custody of the dogs seized from the property leased by the defendant and Jennings. In its petition, the plaintiff requested, inter alia, orders that (1) the dogs and unborn puppies at issue were neglected and/or were treated cruelly in violation of § 53-247, (2) the court vest temporary and permanent ownership and custody of the dogs and unborn puppies with the plaintiff pursuant to § 22-329a (g), and (3) the defendant and Jennings, pursuant to § 22-329a (h), pay the plaintiff the expenses incurred in providing proper food, shelter, and care to the dogs of which it took custody under § 22-329a. On July 12, 2023, the court, *Shah, J.*, granted the plaintiff's application for an order to show cause, vesting temporary care and custody of the dogs in the plaintiff, and scheduled an evidentiary hearing within fourteen days.

On July 19, 2023, the defendant filed a motion for the return of his property and to suppress evidence. In his motion, the defendant argued that the officers' entry into the locked barn and the seizure of the dogs therein violated his rights under the fourth amendment to the United States constitution because the police did not have a warrant to enter the barn or probable cause that

any crime was being committed that would allow them to enter the barn. On July 24, 2023, the plaintiff filed an objection to the defendant's motion to suppress. The plaintiff argued that the officers' decision to enter the barn did not constitute an illegal search under the fourth amendment. Specifically, the plaintiff asserted that § 22-329a authorizes warrantless searches and seizures when, as in the present case, an animal control officer has reasonable cause to believe that an animal is in imminent harm and neglected, or cruelly treated. The plaintiff also argued that, even if a warrant were required, the officers' decision to enter the barn fell within the consent and exigent circumstance exceptions to the warrant requirement.

On July 26, 2023, the court, *Hon. Edward S. Domnarski*, judge trial referee, held an evidentiary hearing on the plaintiff's petition and the defendant's motion to suppress. The court heard testimony from Animal Control Officer Gail Petras, the defendant, and Jennings. The plaintiff offered multiple photographs, which were admitted into evidence, that documented the conditions of the house and barn leased by the defendant and Jennings, and the dogs found therein, along with a bill for the veterinary expenses for the dogs. The defendant and Jennings also offered photographs of the exterior of the barn, which were admitted into evidence, that depicted one open window, high on the gable end of the barn.

On August 21, 2023, the court issued a memorandum of decision in which it granted the plaintiff's petition, in part, and denied the defendant's motion to suppress. The court concluded that the plaintiff did not establish that the dogs in the defendant's and Jennings' home, including the three corgi puppies, were neglected as required by § 22-329a. The court, however, found that the five dogs in the barn were neglected under § 22-329a. The court also concluded that, because it found

that the pregnant dogs in the barn were neglected, it followed that the unborn puppies those dogs were carrying were likewise neglected. The court reasoned that "[t]he dogs had been left confined and unattended for approximately thirty-six hours when the weather was hot and humid. [Petras] was present when police officers entered the padlocked barn. She testified as to the unwholesome and unsanitary conditions in the barn. . . . Petras also testified as to the condition and appearance of the five dogs in the barn.

"At the hearing, [the defendant] and Jennings stated that the conditions in the house and barn were the result of a 'bad day.' The court does not find [the defendant or] Jennings to be credible on this issue. [Petras] testified that the conditions in the barn did not come about in only one day. The court has considered the testimony of [Petras] related to the conditions in the barn and the animals therein. The court finds the testimony of [Petras], as supported by the submitted exhibits, to be credible." (Citation omitted.)

Regarding the defendant's motion to suppress evidence related to the police officers' entry into the locked barn, the court stated that it was unpersuaded by the defendant's arguments. The court noted that § 22-329a (a) allows an animal control officer to act and enter property to take custody of an animal when that animal is in imminent harm and is neglected. The court concluded that the circumstances that existed on June 27, 2023, met the requirement of imminent harm provided for in the statute. The court stated that, "[a]t the time the officers entered the barn on the afternoon of June 28, 2023, it was their understanding that the dogs had been confined and left unattended for at least thirty-six hours. The officers attempted to contact Jennings without success. [The defendant] was still in custody from the earlier arrest. The officers had not been informed that someone was coming to unlock the barn and tend to the dogs. . . . Because of the high levels of

temperature and humidity, the officers were concerned that the dogs did not have adequate ventilation, water, or food. . . . [U]nder §§ 22-329a and 53-247, failure to supply confined animals wholesome air, food, and water constitutes neglect." (Citations omitted.) Accordingly, the court issued the following orders: "(1) The dogs in the barn . . . together with the nineteen puppies . . . are found to be neglected and the court vests ownership of these dogs and puppies in [the plaintiff]. (2) The dogs in the house . . . and the three . . . corgi puppies, are found not to be neglected and may be returned to an agent of the [defendant and Jennings] . . . . (3) The [defendant and Jennings] are to pay the [plaintiff] the sum of $1062.50 for veterinary expenses. (4) The [defendant and Jennings] are to pay the [plaintiff] $19,020 for expenses for the care and custody of the dogs found to be neglected."

On August 29, 2023, the defendant filed a motion for a new trial and a memorandum of law in support of his motion. On September 6, 2023, the plaintiff filed an objection to the defendant's motion. On September 18, 2023, the court held a hearing on the defendant's motion, and, on September 20, 2023, the court issued an order denying the defendant's motion. This appeal followed.

I

The defendant first claims that the court erred when it improperly denied his motion to return property and suppress evidence obtained pursuant to a warrantless search and seizure. Specifically, the defendant argues that his constitutional rights under the fourth amendment to the United States constitution were violated because the evidence presented at the hearing "did not permit a finding that the police reasonably believed a warrantless entry was necessary to help an animal in immediate need of assistance." The defendant also asserts that there was "no objective evidence on the record to support the court's conclusion that a reason-

able officer would determine the dogs were both in 'imminent harm and neglected.' " The defendant further contends that the court improperly applied § 22-329a in denying his motion to suppress because it omitted the statutory requirement that the officers have reason to believe the confined animals were neglected. We are not persuaded.

The following legal principles and additional procedural history are relevant to our resolution of the defendant's claim. "As a general matter, the standard of review for a motion to suppress is well settled. A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record. . . . [W]hen a question of fact is essential to the outcome of a particular legal determination that implicates a defendant's constitutional rights, [however] and the credibility of witnesses is not the primary issue, our customary deference to the trial court's factual findings is tempered by a scrupulous examination of the record to ascertain that the trial court's factual findings are supported by substantial evidence. . . . [W]here the legal conclusions of the court are challenged, [our review is plenary, and] we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision. . . . Moreover, [i]t is by now well settled that, in order to determine whether the defendant's constitutional rights have been infringed, [w]e review the record in its entirety and are not limited to the evidence before the trial court at the time the ruling was made on the motion to suppress." (Citation omitted; internal quotation marks omitted.) *State* v. *Leuders*, 225 Conn. App. 612, 632–33, 317 A.3d 69 (2024).

The defendant does not dispute that, by virtue of § 22-329 (a), an animal control officer may lawfully take

physical custody of an animal if the officer has reasonable cause to believe that the animal is in imminent harm and is neglected or cruelly treated. Nor does he claim that an imminent threat to the animals would not justify a warrantless search under the fourth amendment to the United States constitution.[4] He asserts, instead, that the evidence and circumstances of this case do not satisfy the imminent harm standard under § 22-329a (a) and, therefore, that the animal control officers were required to obtain a warrant, pursuant to § 22-329a (b) and the fourth amendment, prior to entering the barn and taking custody of any animal on the property. We disagree.

Section 22-329a is titled "Seizure and custody of neglected or cruelly treated animals." It provides in relevant part: "(a) Any animal control officer . . . may take physical custody of any animal when such animal control officer has reasonable cause to believe that such animal is in imminent harm and is neglected or is cruelly treated in violation of section 22-366, 22-415, 53-247, 53-248, 53-249, 53-249a, 53-250, 53-251, 53-252 or 53a-73b, and, not later than ninety-six hours after taking physical custody, shall proceed as provided in subsection (c) of this section . . . ." General Statutes § 22-329a (a). Subsection (c) of § 22-329a provides in relevant part: "Such officer shall file with the superior court which has venue over such matter or with the

---

[4] The law is clear that "[t]he fourth amendment does not bar police officers, when responding to emergencies, from making warrantless entries into premises and warrantless searches when they reasonably believe that *a person* within is in need of immediate aid." (Emphasis added; internal quotation marks omitted.) *State* v. *DeMarco*, 311 Conn. 510, 535, 88 A.3d 491 (2014). As this court recently noted though, neither our Supreme Court nor this court has addressed whether the imminent threat of harm to a nonhuman animal justifies a warrantless search. See *State* v. *Leuders*, supra, 225 Conn. App. 636 n.22. Courts in other states that have considered the issue have held that the risk of imminent harm to a nonhuman animal constitutes exigent circumstances under the fourth amendment. See, e.g., *Commonwealth* v. *Duncan*, 467 Mass. 746, 751–54, 7 N.E.3d 469, cert. denied, 574 U.S. 891, 135 S. Ct. 224, 190 L. Ed. 2d 170 (2014); *State* v. *Fessenden*, 355

superior court for the judicial district of Hartford at Hartford a verified petition plainly stating such facts of neglect or cruel treatment as to bring such animal within the jurisdiction of the court and praying for appropriate action by the court in accordance with the provisions of this section. . . ."[5] It is clear from the plain language of § 22-329a that an animal control officer may take physical custody of an animal when the officer has reasonable cause to believe that such animal is in imminent harm and is neglected or cruelly treated. In such circumstances, a warrant is unnecessary. As previously noted in this opinion, the defendant does not claim that the statutory imminent harm requirement is incompatible with or different from the immediate aid or exigent circumstances requirements for warrantless searches under the fourth amendment. Once an animal control officer takes physical custody of such animal, she must then seek court intervention within ninety-six hours.[6]

Or. 759, 775–76, 333 P.3d 278 (2014). Because the defendant has not argued otherwise, we need not resolve that question in this case.

[5] We note that, in nonemergency circumstances, an animal control officer must first obtain a warrant, pursuant to § 22-329a (b), in order to take physical custody of an animal. Specifically, General Statutes § 22-329a (b) provides in relevant part: "Any animal control officer . . . may take physical custody of any animal upon issuance of a warrant finding probable cause that such animal is neglected or is cruelly treated in violation of section 22-366, 22-415, 53-247, 53-248, 53-249, 53-249a, 53-250, 53-251, 53-252 or 53a-73b, and shall thereupon proceed as provided in subsection (c) of this section . . . ."

[6] In *Wethersfield ex rel. Monde* v. *Eser*, 211 Conn. App. 537, 548–51, 274 A.3d 203 (2022), this court had occasion to discuss the legislative history underlying § 22-329 (a). Although we need not resort to the statute's legislative history to resolve the issues presented in the present case, this court's prior discussion of the legislative history provides useful background: "The legislative history of § 22-329a reveals that the 2007 amendment to that statute; see Public Acts 2007, No. 07-230, § 1; substantially revised it in response to Judge Berger's criticism of the prior version of the statute in *State ex rel. Griffin* v. *Thirteen Horses*, Docket No. CV-06-4019747-S, 2006 WL 1828459 (Conn. Super. June 16, 2006). In that decision, Judge Berger noted that portions of the statute were 'difficult to understand because if the court has found probable cause to believe that an animal is neglected or cruelly treated, then leaving the animal in the owner's custody pending a hearing would only perpetuate its suffering. . . . One could argue that . . . the legislature did not intend to require a judicial finding in advance

of the seizure . . . . If the legislature does intend to vest the seizure decision in the animal control officer, rather than in the court, the statute should be redrafted accordingly, with provisions for immediate filing of the petition and a speedy hearing.' . . . Id., *4–5. Judge Berger concluded with respect to the prior revision of the statute that, 'despite the deficiencies of the statute, the state successfully complied with its twofold obligation of obtaining a judicial determination of reasonable cause prior to seizure . . . and following the filing process . . . . The state obtained the search and seizure warrant from the court . . . and filed its petition with the court . . . .' Id., *5.

"When discussing the 2007 amendment on the floor of the House of Representatives, Representative Gerry Fox explained the origins of the amendment: 'This bill came to us from the Commissioner of Agriculture and requested a change to the way that animal control officers currently handle situations where animals are treated cruelly or neglected. Presently, when an animal control officer sees a situation that may appear to be dangerous to an animal, they're required to go to court and get a warrant. What this would allow is if there's reasonable cause to believe that an animal [is] in imminent harm of being cruelly or negligently treated, the animal control officer may, at that time, seize the animal.' 50 H.R. Proc., Pt. 25, 2007 Sess., p. 8077, remarks of Representative Gerry Fox. In support of the legislation, Representative Urban stated: 'This bill makes it much easier when there is an animal that is being subjected to cruel treatment or a cruel situation to get in and to mitigate that situation and be able to move the horse, the dog, the cat, the puppy, whatever it happens to be, out of that situation and into a place where they will be able to receive the treatment they need.' Id., pp. 8078–79, remarks of Representative Diana Urban. In the judiciary committee, the then Commissioner of Agriculture, F. Philip Prelli, explained that 'the Department of Agriculture is the lead agency in investigation of animal cruelty and negligence. . . . Even if it's done on a local level, the department is involved with those. The primary purpose of [this] legislative proposal is to better define and clarify the section to enable animal control officers to take physical custody of animals that animal control officers have a reasonable cause to believe are in imminent harm and/or are neglected or being cruelly treated. One of the things that we've noticed about the law that's there, it's been a while since it's been modified, and the language tends to be language that was written a number of years ago. . . . Usually, the animal control officers will go in there and try to work with the people to either get the animals fed, get the treatment up right, so they're treated correctly, and then go to the steps. And if they still feel they need to take those steps, they will get a warrant first. So the steps that we're defining here are never going to be the norm. But there are times when our animal control officers will see an animal that is truly in jeopardy of dying, and we've seen that. We've seen horses down, and we've seen cows down, where we've had to try to seize those animals and then go and get the court order. So what this does is then sets up the procedure that will give us the opportunity to seize the animals. Then within [ninety-six] hours, we will have to get a court order . . . .' Conn. Joint Standing Committee Hearings, Judiciary, Pt. 14, 2007 Sess., pp. 4422–23, remarks of Commissioner of Agriculture F. Philip Prelli.

"According to the legislative history, the process in § 22-329a (a) for taking physical custody of animals in imminent harm is not the norm. Rather, the

In its memorandum of decision, the court denied the defendant's motion to suppress on the basis that "[t]he circumstances that existed on June 27, 2023, as testified to by [Petras], met the requirement of imminent harm provided for in [§ 22-329a (a)]." The court reasoned that, "[o]n June 27, 2023, Jennings told the officers that there were three dogs in the barn. One of the dogs was an aggressive male and the other two dogs were pregnant. At the time the officers entered the barn on the afternoon of June 28, 2023, it was their understanding that the dogs had been confined and left unattended for at least thirty-six hours. The officers attempted to contact Jennings without success. . . . The officers had not been informed that someone was coming to unlock the barn and tend to the dogs. . . . Because of the high levels of temperature and humidity, the officers were concerned that the dogs did not have adequate ventilation, water or food. . . . Petras also stated there was a concern that the dogs could suffer from dehydration, which could cause death. . . . The court finds [Petras'] testimony regarding her belief that the dogs were in imminent harm and neglected to be reasonable and credible." (Citations omitted.)

Our scrupulous examination of the entire record supports the court's conclusion that the officers had reasonable cause to believe that the dogs contained within the barn were in imminent harm and neglected, or cruelly treated. Petras testified that, prior to entering the barn, the officers believed that the dogs therein had

usual process is codified in § 22-329a (b), which provides in relevant part that '[a]ny animal control officer or regional animal control officer . . . may take physical custody of any animal upon issuance of a warrant finding probable cause that such animal is neglected or is cruelly treated . . . and shall thereupon proceed as provided in subsection (c) of this section . . . .' General Statutes (Supp. 2022) § 22-329a (b). Accordingly, when, prior to taking physical custody of an animal, a warrant is issued finding probable cause that such animal is neglected or cruelly treated, there is no statutory time frame for the filing of a verified petition." (Footnote omitted.) *Wethersfield ex rel. Monde* v. *Eser*, supra, 211 Conn. App. 548–51.

not been cared for in approximately thirty-six hours and that the officers were concerned that the dogs' lives were potentially in danger on the basis of the weather, the lack of ventilation in the barn, and the dogs' access to water. The court credited Petras' testimony. On the basis thereof, we conclude that the court properly determined that the animal control officers had reason to believe the dogs confined in the barn were in imminent harm and neglected, or cruelly treated, and that they properly took physical custody of the dogs therein.

Accordingly, we conclude that the court properly applied § 22-329a (a) in denying the defendant's motion to suppress evidence. We further conclude that, because the evidence supported the court's finding that the officers reasonably concluded that the dogs were in imminent danger, the warrantless search did not violate the defendant's rights under the fourth amendment.[7]

---

[7] Although the plaintiff has not questioned whether the fourth amendment's exclusionary rule applies in this case, it is not entirely clear to us that it does. This court has previously recognized the general principle that "the exclusionary rule does not apply to civil cases . . . ." (Citation omitted.) *Tompkins* v. *Freedom of Information Commission*, 136 Conn. App. 496, 499 n.4, 46 A.3d 291 (2012). Both our Supreme Court and this court have applied a balancing test based on the United States Supreme Court's decision in *United States* v. *Janis*, 428 U.S. 433, 446–47, 96 S. Ct. 3021, 49 L. Ed. 2d 1046 (1976), when addressing whether the fourth amendment applied in a case other than a criminal prosecution. See, e.g., *Fishbein* v. *Kozlowski*, 252 Conn. 38, 54, 743 A.2d 1110 (1999) (applying *Janis* balancing test when determining whether exclusionary rule applies to driver's license suspension hearings); *Payne* v. *Robinson*, 207 Conn. 565, 570–73, 541 A.2d 504 (applying *Janis* balancing test when determining whether exclusionary rule applies to probation revocation proceedings), cert. denied, 488 U.S. 898, 109 S. Ct. 242, 102 L. Ed. 2d 230 (1988); *Boyles* v. *Preston*, 68 Conn. App. 596, 612–13, 792 A.2d 878 (applying *Janis* balancing test when determining whether exclusionary rule applies to civil trial), cert. denied, 261 Conn. 901, 802 A.2d 853 (2002). The *Janis* balancing test requires a court to "weigh the likely social benefits of excluding unlawfully seized evidence against the likely costs." *Immigration & Naturalization Service* v. *Lopez-Mendoza*, 468 U.S. 1032, 1041, 104 S. Ct. 3479, 82 L. Ed. 2d 778 (1984). "The question of whether the exclusionary rule applies in a particular civil case requires weighing the deterrent benefits of applying the rule against the societal cost

## II

The defendant next claims that §§ 22-329a and 53-247, as applied to both him and Jennings, are void for vagueness. Specifically, the defendant argues that the statutes do not define neglect with particularity because the failure to provide "wholesome air, food and water" to a confined animal, which is prohibited by § 53-247 (a), does not identify what type of ventilation is required to provide a confined animal with wholesome air or how long an animal can go without food or water before such conduct is considered to be neglect. We are not persuaded.

As a preliminary matter, we address the plaintiff's argument that this claim was not preserved for appellate review. Although we agree with the plaintiff that this claim is unpreserved, we conclude that the claim is reviewable under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015),[8] but that it nonetheless fails under the third prong of *Golding*.[9]

---

of excluding relevant evidence. . . . There is no 'bright line' to determine when the rule should apply, and courts must apply the *Janis* analytic framework on a case by case basis." (Citation omitted.) *Ahart* v. *Colorado Dept. of Corrections*, 964 P.2d 517, 520 (Colo. 1998). Because the parties have not undertaken a *Janis* analysis or otherwise addressed the applicability of the exclusionary rule, and because we have concluded that the defendant's claim fails, even if we were to assume that the exclusionary rule applies to the search in this case, we do not need to reach the question of the exclusionary rule's applicability to the facts of this case.

[8] "Under *Golding*, a defendant can prevail on an unpreserved claim only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original; internal quotation marks omitted.) *State* v. *Carlson*, 226 Conn. App. 514, 532 n.15, 318 A.3d 283 (2024).

[9] "[T]o obtain review of an unpreserved claim pursuant to [*Golding*], a defendant need only raise that claim in his main brief, wherein he must present a record that is [adequate] for review and affirmatively [demonstrate] that his claim is indeed a violation of a fundamental constitutional right."

The following additional legal principles are relevant to our resolution of this claim. "The void for vagueness doctrine is a procedural due process concept that originally was derived from the guarantees of due process contained in the fifth and fourteenth amendments to the United States constitution. . . . The doctrine [of void for vagueness] requires statutes to provide fair notice of the conduct to which they pertain and to establish minimum guidelines to govern law enforcement." (Internal quotation marks omitted.) *In re Aurora H.*, 222 Conn. App. 307, 328, 304 A.3d 875, cert. denied, 348 Conn. 931, 306 A.3d 1 (2023). "A statute . . . [that] forbids or requires conduct in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process. . . . Laws must give a person of ordinary intelligence a reasonable opportunity to know what is prohibited so that he may act accordingly. . . . A statute is not void for vagueness unless it clearly and unequivocally is unconstitutional, making every presumption in favor of its validity. . . . To demonstrate that [a statute] is unconstitutionally vague as applied to [them], the [defendants] therefore must . . . demonstrate beyond a reasonable doubt that [they] had inadequate notice of what was prohibited or that [they were] the victim[s] of arbitrary and discriminatory enforcement. . . . [T]he void for vagueness doctrine embodies two central precepts: the right to fair warning of the effect of a governing statute . . . and the guarantee against standardless law enforcement. . . . If the meaning of a statute can be fairly ascertained a statute will not be void for vagueness since [m]any statutes will have some inherent vagueness, for [i]n most English words and phrases there lurk uncertainties. . . . Unless a vagueness claim

(Internal quotation marks omitted.) *Bethlehem* v. *Acker*, 153 Conn. App. 449, 471 n.16, 102 A.3d 107, cert. denied, 315 Conn. 908, 105 A.3d 235 (2014).

implicates the first amendment right to free speech, [a] defendant whose conduct clearly comes within a statute's unmistakable core of prohibited conduct may not challenge the statute because it is vague as applied to some hypothetical situation . . . ." (Citation omitted; internal quotation marks omitted.) *State ex rel. Gregan* v. *Koczur*, 287 Conn. 145, 156–57, 947 A.2d 282 (2008). "A statute is not unconstitutional merely because a person must inquire further as to the precise reach of its prohibitions, nor is it necessary that a statute list the exact conduct prohibited." (Internal quotation marks omitted.) *In re Aurora H.*, supra, 329.

In *Koczur*, our Supreme Court stated that it is clear from the language of the statute that "§ 22-329a does not contain an independent standard of neglect but, instead, incorporates by reference the standards of the specific statutes enumerated therein." *State ex rel. Gregan* v. *Koczur*, supra, 287 Conn. 153; id., 157 (§ 22-329a is not void for vagueness despite its failure to define "neglect"). At issue in *Koczur*, as in the present case, was the portion of § 22-329a that expressly incorporates the standard of neglect codified in and prohibited by § 53-247. See id., 153–55. Section 53-247 provides in relevant part: "(a) Any person who . . . deprives of necessary sustenance . . . any animal, or who, having impounded or confined any animal, fails to give such animal proper care or . . . fails to supply any such animal with wholesome air, food and water, or . . . having charge or custody of any animal . . . fails to provide it with proper food, drink or protection from the weather . . . shall, for a first offense, be fined not more than one thousand dollars or imprisoned not more than one year or both . . . ." In *Koczur*, our Supreme Court determined that "[i]t is reasonable to conclude . . . that the neglect referred to in § 22-329a includes the failure to provide necessary sustenance, proper

care, wholesome air, food and water under § 53-247
(a)." *State ex rel. Gregan* v. *Koczur*, supra, 154.

Even assuming, as the defendant claims, that the
phrase "wholesome air, food and water" as used in § 53-
247 (a) may be susceptible to some degree of interpreta-
tion, our careful review of the record satisfies us that
the defendant's and Jennings' conduct comes within
the statute's unmistakable core of prohibited conduct.
In the present case, the court found that the dogs had
been left unattended in the barn for at least thirty-six
hours when the weather was hot and humid and that
Deacon, Ruby, and Mitzi did not have access to food
or water. Luna and Lily, both pregnant, also did not
have access to food; however, they had access to water.
Moreover, the court found that the barn floor was cov-
ered in urine and feces and that the smell of ammonia
and feces was so strong that it affected the officers'
breathing and created a burning sensation in their eyes
and noses. The court also found that the barn did not
have active ventilation.[10] Put simply, a person of ordi-
nary intelligence would know that confining five dogs
in a barn in these conditions for at least thirty-six hours
constituted a failure to provide proper care for the
dogs under any reasonable standard. Accordingly, we
conclude that the statute afforded the defendant and
Jennings adequate notice of the type of conduct prohib-
ited thereby and that the defendant therefore has failed
to demonstrate that § 53-247 (a) is unconstitutionally
vague as applied to his and Jennings' conduct through
§ 22-329a.

---

[10] The defendant argues that the court failed to give greater weight to the
evidence that he submitted of an open window in the barn that provided air
to the dogs. The court acknowledged, however, that the defendant submitted
evidence of an open window in the barn in its memorandum of decision
but concluded that, when "[c]onsidering the size of the barn, the pictures
of the interior of the barn, and the testimony regarding breathing conditions
in the barn, the court cannot find that this one window was sufficient to
provide wholesome air for the five dogs in the barn."

## III

The defendant next claims that the police did not "provide [Jennings] with fair notice of the law" because the officers failed to notify her that the lack of ventilation in the barn constituted neglect under § 22-329a. Specifically, the defendant argues that the officers should have notified him and Jennings of the neglectful conditions and provided them with an opportunity to remedy the situation. We conclude that this claim is inadequately briefed, and, therefore, we decline to address it.

"We repeatedly have stated that [w]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . [When] a claim is asserted in the statement of issues but thereafter receives only cursory attention in the brief without substantive discussion or citation of authorities, it is deemed to be abandoned. . . . For a reviewing court to judiciously and efficiently . . . consider claims of error raised on appeal . . . the parties must clearly and fully set forth their arguments in their briefs. . . . In addition, briefing is inadequate when it is not only short, but confusing, repetitive, and disorganized. . . .

"We are mindful that [i]t is the established policy of the Connecticut courts to be solicitous of [self-represented] litigants and when it does not interfere with the rights of other parties to construe the rules of practice liberally in favor of the [self-represented] party. . . . Nonetheless, [a]lthough we allow [self-represented] litigants some latitude, the right of self-representation provides no attendant license not to comply with relevant rules of procedural and substantive law." (Internal quotation marks omitted.) *Gleason* v. *Durden*, 211 Conn.

App. 416, 439–40, 272 A.3d 1129, cert. denied, 343 Conn. 921, 275 A.3d 211 (2022).

The defendant baldly asserts that the officers were required to notify Jennings that the conditions of the barn were neglectful and to give them a chance to remedy the situation. The defendant, however, does not provide any applicable legal authority or meaningful analysis in his appellate brief, nor are we aware of any legal authority, to support his claim. See *C. W.* v. *Warzecha*, 225 Conn. App. 137, 147, 314 A.3d 617 (2024) (claim was inadequately briefed when defendant provided no applicable legal authority or meaningful analysis in support of claim). Accordingly, the defendant's claim is inadequately briefed, and we decline to review it.

IV

The defendant further claims that the court applied an improper legal standard in defining neglect under § 22-329a. Specifically, the defendant argues that the court applied a standard of neglect that is applicable only to commercial kennels meant for large breeding operations. We disagree.

The following additional legal principles are relevant to our resolution of the defendant's claim. "The meaning of neglect under § 22-329a is a question of statutory interpretation, over which our review is plenary. . . . When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering

such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Citation omitted; internal quotation marks omitted.) *State ex rel. Gregan* v. *Koczur*, supra, 287 Conn. 152–53.

We reiterate that § 22-329a (a) provides in relevant part: "Any animal control officer . . . may take physical custody of any animal when such animal control officer has reasonable cause to believe that such animal is in imminent harm and is neglected or is cruelly treated in violation of section . . . 53-247 . . . ." Section 53-247 provides in relevant part: "(a) *Any person* who . . . deprives of necessary sustenance . . . or who, having impounded or confined any animal, fails to give such animal proper care . . . or fails to supply any such animal with wholesome air, food and water . . . or, having charge or custody of any animal . . . fails to provide it with proper food, drink or protection from the weather or abandons it . . . shall, for a first offense, be fined not more than one thousand dollars or imprisoned not more than one year or both, and for each subsequent offense, shall be guilty of a class D felony." (Emphasis added.)

Neither § 22-329a nor § 53-247 defines "person." "Generally, in the absence of statutory definitions, we look to the contemporaneous dictionary definitions of words to ascertain their commonly approved usage." *Ledyard* v. *WMS Gaming, Inc.*, 338 Conn. 687, 697, 258 A.3d 1268 (2021). Webster's Third New International Dictionary defines "person" as "an individual human

being . . . a human being as distinguished from an animal or thing . . . ." Webster's Third New International Dictionary (2002) p. 1686. It is therefore clear from the plain language of § 53-247 that the neglect referred to in § 22-329a includes neglect committed by individuals such as the defendant and Jennings, and not just neglect committed by commercial kennels or large breeding operations, as the defendant suggests. Accordingly, in the absence of any indication to the contrary, we conclude that the court applied the proper legal standard in determining that the dogs in the barn, having been neglected by the defendant and Jennings, were properly subject to a warrantless seizure pursuant to § 22-329a (a).

V

The defendant's final claim is that there was insufficient evidence to support a finding that the dogs in the barn were neglected. Specifically, the defendant argues that there was no evidence in the record to support the court's finding that the health or physical conditions of the dogs were adversely affected as a result of the defendant's and Jennings' alleged neglect.[11] We are not persuaded.

We begin by setting forth the applicable standard of review. "The standards governing our review of a sufficiency of evidence claim are well established and rigorous. . . . [W]e must determine, in the light most favorable to sustaining the [judgment], whether the totality of the evidence, including reasonable inferences therefrom, supports the [court's judgment] . . . . In making this determination, [t]he evidence must be given

---

[11] In his appellate brief, the defendant also claims that the court abused its discretion because "the [judgment] is not supported by any empirical or objective evidence nor by substantial evidence." We consider this claim to be factually interrelated to the defendant's evidentiary sufficiency claim, and, therefore, we address both of the defendant's claims together as a singular claim.

the most favorable construction in support of the [judgment] of which it is reasonably capable. . . . In other words, [i]f the [court] could reasonably have reached its conclusion, the [judgment] must stand, even if this court disagrees with it. . . .

"We apply this familiar and deferential scope of review, however, in light of the equally familiar principle that the plaintiff must produce sufficient evidence to remove the [court's] function of examining inferences and finding facts from the realm of speculation." (Internal quotation marks omitted.) *C. W.* v. *Warzecha*, supra, 225 Conn. App. 148.

After a careful review of the record, we conclude that the totality of the evidence was sufficient to support the court's judgment that the dogs confined in the barn were neglected. During the July 26, 2023 hearing, Petras testified that the dogs in the barn had not received care for at least thirty-six hours prior to the officers entering the barn. Petras also testified that, when the officers entered the barn, they "found ripped open bags of dog food that were empty on the floor. [Luna and Lily] had [one] half of a five gallon pail with water in it, and we found empty buckets tipped over [for Deacon, Ruby, and Mitzi]." Petras further testified that "it was very hot and humid in there because there was no airflow, and there was an excessive amount of feces and urine on the floor of the barn. . . . It was very difficult to breathe. The officers who were in [the barn] reported that their . . . eyes and noses were burning from the ammonia smell of the urine." In addition to Petras' testimony, the plaintiff submitted photographs, which were admitted into evidence, depicting the conditions of the barn and the dogs found therein. The court specifically found that Petras' testimony was supported by the photographs submitted. Therefore, construing the evidence in the light most favorable to upholding the

judgment, we conclude that the evidence was sufficient to support a finding of neglect pursuant to § 22-329a.

To the extent the defendant argues that the plaintiff was required to produce evidence that the dogs' health or physical conditions were adversely affected for the court to find the dogs neglected, such argument assigns a higher burden of proof than that which is required by the relevant statutes. Pursuant to § 22-329a, the plaintiff can prove that the dogs confined in the barn were neglected or cruelly treated under § 53-247 (a) by showing that the defendant and Jennings failed to supply the dogs with wholesome air, food and water. The statute does not require the plaintiff to prove that the confined animals suffered actual physical injuries or adverse effects as a result of those conditions.

Accordingly, we conclude that the evidence was sufficient to support the court's finding that the dogs in the barn were neglected.

The judgment is affirmed.

In this opinion the other judges concurred.